**Andrea BOYD, Plaintiff,**

v.

**HARDING ACADEMY OF MEMPHIS, INC., Defendant.**

No. 93–2867–M1/Bro.

United States District Court,
W.D. Tennessee,
Western Division.

May 31, 1995.

158

because of her unwed pregnancy, and that her discharge for this reason constitutes sex discrimination in violation of Title VII. Plaintiff seeks reinstatement as a regular employee with full retroactive seniority rights, sick leave, vacation pay, and all other benefits she would have received if not for her discharge. Defendant, however, contends that it did not violate Title VII in terminating plaintiff, but legitimately terminated plaintiff because of her violation of the New Testament's proscription of pre-marital sex.

A non-jury trial was held in this matter on August 25–26, 1994. The Court, having considered the oral and written arguments of counsel, as well as the relevant evidence, including the testimony of witnesses, concludes that plaintiff has failed to meet her burden of proof in establishing a Title VII gender discrimination claim. Therefore, for the reasons set for the hereinafter, judgment in this case is for the defendant.

## FINDINGS OF FACT

Plaintiff, who is unmarried, was employed by defendant Harding Academy of Memphis, Inc., ("Harding Academy"), in January of 1992 as a teacher in a preschool facility known as Little Harding. Harding Academy is a religious school affiliated with the Church of Christ, and as such, expects that its teachers will adhere to the religious tenants it supports. All faculty members are required to be Christians with a preference given to Church of Christ members. Harding Academy uses as its religious tenants the teachings of the New Testament, and one of the religious principles embodied therein is that sex outside of marriage is proscribed. Plaintiff knew that Harding Academy was a church-related school and indicated on her employment application that she had a Christian background and believed in God.[1]

Richard L. Rikard, Memphis, TN, for plaintiff.

Richard M. Murrell, William Edward Russell, Memphis, TN, for defendant.

## MEMORANDUM OPINION

McCALLA, District Judge.

This matter is before the Court upon plaintiff's claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alleging sex discrimination, which resulted in her termination as a pre-school teacher for the defendant's pre-school, Little Harding. Specifically, plaintiff alleges she was discharged

---

1. Plaintiff testified at trial that she was never told that she would be terminated from Harding Academy if she engaged in sex outside of marriage. However, the faculty handbook given to plaintiff after she was hired reads: "Christian character, as well as professional ability, is the basis for hiring teachers at Harding Academy. Each teacher at Harding is expected in all actions to be a Christian example for the students...." (Harding Academy faculty handbook ¶ 1.) Plaintiff also testified in her deposition that she did not know of any Christian religious organization that teaches that sexual activity among unmarried persons is appropriate or moral. (Plaintiff's Dep. at 54, Lines 15–19.)

In early February, 1993, Brenda Rubio, the director of the Little Harding program, was told by her assistant Sharon Cooper that plaintiff might be pregnant. That information, if true, would unequivocally establish that plaintiff had engaged in sex outside of marriage. Upon receiving this information, Brenda Rubio reported the information through her superior to Dr. Harold Bowie, the President and Chief Executive Officer of Harding Academy. Dr. Bowie required that the information be confirmed by direct conversation with plaintiff, and further directed that plaintiff be terminated if the information were true. At trial, Dr. Bowie testified that he determined to terminate plaintiff if it were verified that plaintiff was pregnant and unmarried, not because of the pregnancy per se, but because the facts would indicate that plaintiff engaged in sex outside of marriage.

At Dr. Bowie's instruction, a meeting was scheduled between plaintiff, Brenda Rubio, and Sharon Cooper. At that meeting, plaintiff admitted that she was pregnant. Plaintiff was then informed that she would be terminated but that she would be eligible for re-employment if she were to marry the father of the child. During this meeting, Brenda Rubio used words to the effect that plaintiff was being terminated because she was "pregnant and unwed." Plaintiff relies on the statements made by Brenda Rubio at this meeting in support of her allegations that her discharge from Harding Academy under the circumstances of her out of wedlock pregnancy constitutes impermissible gender discrimination. However, Brenda Rubio's testimony at trial also indicates that in explaining the reason for plaintiff's termination, Brenda Rubio used the phrase "pregnant and unwed" to mean plaintiff engaged in sex outside of marriage in violation of the religious principles subscribed to by Harding Academy. It is not disputed that Brenda Rubio did not have the power or authority to terminate plaintiff or any other employee of Harding Academy.

It is also undisputed that Dr. Bowie is the only person with the authority to terminate the employment of teachers at Harding Academy. Throughout Dr. Bowie's tenure as the chief administrative officer of Harding Academy, Dr. Bowie has discharged teachers, both male and female, for engaging in acts of sex outside of marriage, whether or not pregnancy resulted from the proscribed sexual conduct.[2] No instance of deviation from this doctrine-based policy was shown to the Court under circumstances where knowledge of an employee's sexual activity outside of marriage was made known to Dr. Bowie.[3] Furthermore, it was not shown that women employees at Harding Academy are terminated solely on the basis of pregnancy. In fact, the testimony at trial demonstrated that many married women have become pregnant while working at Harding Academy and have remained employed during and after their pregnancies.[4]

---

2. At trial, Dr. Bowie testified that there have been several times during his tenure as chief administrative officer of Harding Academy that he has terminated employees for violating the religious principles subscribed to by Harding Academy. In 1961, James Rogers was terminated for living with a woman who was not his wife. (Trial transcript Vol. II at 105.) Approximately ten (10) years ago, another male, Bob Alley, who was then the principal or academic dean and who had worked at Harding Academy approximately twenty (20) years, was terminated for sexual immorality. (Vol. II at 108.) In terms of female employees terminated for engaging in sex outside of marriage, Dr. Bowie testified that Betty Madewell Dover, an elementary school teacher, was involved with a man to whom she was not married and was terminated based on this conduct. (No pregnancy resulted in Ms. Dover's case). (Vol. II at 110.) Another female, Wanda Watson, was also terminated based on her involvement in an extramarital relationship, in which no pregnancy resulted. (Vol. II at 111.) The evidence presented at trial also indicated that another female, Toni Climer, was also terminated based on the fact that she became pregnant while unwed, but was subsequently rehired when she married the father of the child. (Vol. II at 74–78.)

3. It is not controverted that Brenda Rubio knew of an earlier miscarriage by plaintiff. However, when plaintiff told Brenda Rubio that she had a miscarriage, Brenda Rubio failed to inform any of her supervisors or anyone in the Harding Academy administration about plaintiff's sexual conduct and the resulting miscarriage.

4. Dr. Bowie identified at least six married women employees who became pregnant while working at Harding Academy and returned to work after their maternity Leave. (Trial transcript Vol. II at 114–116.)

## CONCLUSIONS OF LAW

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on sex. 42 U.S.C. § 2000e *et seq.* Section 2000e–2(a) states that:

[i]t shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin;

42 U.S.C. § 2000e–2(a).

Title VII further defines sex discrimination as follows:

The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes. . . .

42 U.S.C. § 2000e(k).

Section 2000e(k), referred to as the Pregnancy Discrimination Act, makes clear that sex discrimination includes any adverse employment decision based upon pregnancy.

Section 2000e–1, however, exempts religious entities from Title VII as follows:

(a) Inapplicability of subchapter to certain aliens and employees of religious entities

This subchapter shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

▮ Although this provision permits religious organizations to discriminate based on religion, religious employers are not immune from liability for discrimination based on race, sex, or national origin. In order for the religious entities exemption in Title VII to apply, a religious employer must make its employment decision upon a religious basis or criteria. *See, e.g., EEOC v. Pacific Press,* 676 F.2d 1272, 1276 (9th Cir.1982). In the present case, defendant Harding Academy asserts that plaintiff's termination was based on her violation of the religious tenant proscribing sex outside of marriage, which was evidenced by the fact of her out of wedlock pregnancy. Plaintiff, however, contends that the religious reason cited by defendant for her termination is simply a pretext for sex discrimination.

▮ It is well-established that to prevail on a Title VII gender discrimination claim under a disparate treatment theory, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once a plaintiff has established a prima facie case, the defendant may rebut this by showing a legitimate nondiscriminatory reason for its actions. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94. If the defendant can show a legitimate nondiscriminatory reason for its employment decision, the plaintiff must then show that the defendant's proffered reason is just a pretext for discrimination. *Id.* In the present case, plaintiff asserts that she was terminated because she was pregnant, not because she violated Harding Academy's proscription against sex outside of marriage and that defendant's proffered reason for her termination is merely pretext for unlawful gender discrimination.

In support of this contention, plaintiff relies upon statements made to her by her supervisor, Brenda Rubio, on February 10, 1993, when plaintiff was terminated. During this meeting, Brenda Rubio used words to the effect that plaintiff was being terminated because she was "pregnant and unwed." Plaintiff asserts that such statements by Brenda Rubio demonstrate that her discharge from Harding Academy was based solely on her pregnancy and therefore constitutes impermissible gender discrimination. However, Brenda Rubio's testimony at trial also indicates that in explaining the reason

for plaintiff's termination, Brenda Rubio used the phrase "pregnant and unwed" to mean plaintiff engaged in sex outside of marriage in violation of the religious principles subscribed to by Harding Academy.[5] Thus, plaintiff's reliance on Brenda Rubio's statements during the February 1993 meeting does not establish that defendant's proffered nondiscriminatory reason for plaintiff's termination was pretextual.[6] Furthermore, as Brenda Rubio did not have the power or authority to terminate plaintiff or any other employee of Harding Academy, her statements regarding the reasons for plaintiff's termination are not probative of Harding Academy's alleged liability in this case.

■ Plaintiff, however, asserts that regardless of Dr. Bowie's reason for plaintiff's termination, plaintiff's selection as a candidate for dismissal was made by Brenda Rubio in an allegedly discriminatory manner. Plaintiff alleges that Brenda Rubio tendered to Harding Academy administration only those cases of females who were pregnant and unwed as opposed to persons generally engaging in sex outside of marriage. Plaintiff further contends that Brenda Rubio's alleged discriminatory selection of plaintiff

for termination is attributed to defendant under agency law, and that defendant is therefore liable for discriminating against plaintiff. While it is undisputed that Brenda Rubio knew of plaintiff's prior miscarriage and failed to report this incidence of plaintiff's sexual conduct, plaintiff did not show that Brenda Rubio knew of and failed to report other incidences of proscribed sexual conduct by other Little Harding employees.[7] Thus, Brenda Rubio's isolated inconsistent application of a defendant's religious-based policy does not invalidate that policy as a legitimate nondiscriminatory reason for plaintiff's termination.

At trial, Dr. Bowie's testimony clearly established that he did not receive information regarding plaintiff's prior miscarriage and that if he had received such information and it was confirmed then plaintiff would have been terminated according to Harding Academy's doctrine-based policy. Dr. Bowie also testified that plaintiff was terminated not because of her pregnancy per se, but because her pregnancy indicated that plaintiff engaged in sex outside of marriage as proscribed by Harding Academy. Dr. Bowie

5. At trial when Brenda Rubio was asked about the reason for plaintiff's termination, the following exchange occurred:

Q: Did you ever imply that the reason you were letting her go is that she had sex outside of marriage?
A: I think saying you're unwed is saying you had sex outside of marriage.
Q: Well, unwed and pregnant.
A: Right. Right.
Q: Well, you're taking what appears to mean—you can correct me—it appears to be fairly simple terms, "pregnant and unwed," but you're saying that you really meant that you had sex outside of marriage because it's obvious that she had sex outside of marriage.
A: That's exactly right. (Trial transcript Vol. I at 97.)

6. During this meeting, plaintiff was also informed that although she was being terminated, she would be eligible for reemployment if she were to marry the father of the child. Dr. Bowie's testimony at trial explained that this option is given to one in plaintiff's position so that she may "correct," as much as possible, the "wrong" that has occurred. (Trial Transcript Vol. II at 138.) The fact that plaintiff's marriage to the father of her child would serve as penance for the "wrong" she committed and qualify her for reemployment supports defendant's contention

that plaintiff's termination was religious based and was not based on plaintiff's gender.

7. In support of plaintiff's contention that her selection as a candidate for dismissal was made by Brenda Rubio in an allegedly discriminatory manner, plaintiff asserts that Brenda Rubio knew or should have known that other Little Harding employees were engaging in sex outside of marriage and that she did not act upon this knowledge. In support of this contention, plaintiff relies on information contained on job application forms completed by certain employees and on testimony regarding a conversation made during orientation week. The evidence relied upon involves inconsistencies on job application forms between the last name of the mother and child and listing the applicant's mother as the next of kin. The testimony relied upon regarding the conversation during orientation week involves statements by some employees of Little Harding to the effect that they were dating the father of their child. However, Brenda Rubio's testimony at trial is that she did not deduce from the applications or any conversation that any of employees were engaging in sex outside of marriage. Furthermore, both Brenda Rubio and her assistant, Sharon Cooper, testified that they did not know of other teachers' sexual activity outside of marriage until plaintiff's deposition in this case.

was a very credible witness and was not materially impeached in any respect. Based on Dr. Bowie's testimony, the fact that Dr. Bowie was the only person with the authority to terminate plaintiff, and the fact that Harding Academy has consistently discharged both male and female employees who engaged in sex outside of marriage, whether or not pregnancy resulted from the conduct, the Court finds that plaintiff has failed to show that defendant's proffered nondiscriminatory reason for plaintiff's termination was mere pretext for gender discrimination. Plaintiff having failed to sustain her burden of proof in this case, plaintiff's claim of gender discrimination under Title VII must be DENIED, and a judgment must be entered in favor of the defendant.

It is therefore Ordered, Adjudged, and Decreed that this cause be, and is hereby dismissed with Prejudice and that a judgment be entered for the defendant in this cause.