United States Court of Appeals,

Eleventh Circuit.

No. 96-6238.

John R. KILLINGER, Plaintiff-Appellant,

v.

SAMFORD UNIVERSITY, Defendant-Appellee.

May 22, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-94-AR-3007-S), William M. Acker, Jr., Judge.

Before EDMONDSON and BLACK, Circuit Judges, and RONEY, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

This case presents the issue of the interpretation of two religious exemptions to Title VII, the "religious educational institution" exemption and the "owned, supported, controlled, or managed" by a "religious association" exemption. Plaintiff says that a university's decision to remove him from his teaching position at its divinity school constituted religious discrimination and that the district court erred in applying the two exemptions to his Title VII claim. Because we believe that this case presents the circumstances envisioned by Congress in drafting these two exemptions, we affirm the district court's judgment for defendant.

I.

Plaintiff John R. Killinger is a professor, author, and preacher. Defendant Samford University ("Samford") is a university located in Birmingham, Alabama. As a result of a bequest in a will, Samford received money to establish a divinity school, the

Beeson School of Divinity.

Plaintiff entered into discussions with the President of Samford about the new divinity school, and was offered a position as Distinguished Professor of Religion and Culture. Under the terms of their agreement, Plaintiff was to teach in both the new divinity school and the undergraduate departments of religion and English.

Plaintiff and the Dean of the Beeson Divinity School do not share the same theological views. Samford eventually removed Plaintiff from the divinity school teaching schedule and, as he says, "[forbade him from] having any involvement with the Divinity School." According to the Complaint, "[b]ecause of his religious philosophy, [Plaintiff] has been denied the opportunity to teach at the Divinity School" and "he has been discriminated against because of religious reasons, more particularly because he did not adhere to and sometime[s] questioned the fundamentalist theology advanced by the leadership of the Beeson School of Divinity, particularly Dr. Timothy George, its Dean." Plaintiff continues to teach undergraduate religion courses.

Plaintiff filed a Title VII claim alleging religious discrimination, along with supplemental claims for breach of contract and negligent supervision. After the parties conducted limited discovery on the issue of whether Samford qualifies for a religious exemption, Samford sought summary judgment. The district court granted the motion.

## II.

We review the grant or denial of summary judgment *de novo,*

applying the same standard to be used by district courts. *Parks v. City of Warner Robins, Ga.,* 43 F.3d 609, 612-613 (11th Cir.1995). The plaintiff in an employment discrimination case bears the burden of establishing that the employer falls within the scope of the pertinent statute. *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990).

A. *Religious Educational Institution Exemption*

Section 702(a) of Title VII provides as follows:

> This subchapter shall not apply ... to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a). Plaintiff presents two arguments about Section 702. First, Plaintiff says that Samford is a "secular" institution, not a "religious" one. Second, Plaintiff says that Samford is entitled to an exemption only if its employment decision was the result of an institutional religious policy and that Samford cannot meet this requirement.

Plaintiff argues that Samford is no "religious" institution as it is not sufficiently "sectarian." In so arguing, Plaintiff seeks to distinguish *EEOC v. Mississippi College,* 626 F.2d 477 (5th Cir.1980). In *Mississippi College,* the former Fifth Circuit accepted the district court's conclusion that Mississippi College was a "religious educational institution."[1] *Id.* at 486. Plaintiff

---

[1]In *Mississippi College,* the EEOC sought to enforce a subpoena against the college to evaluate a complaint of gender and race discrimination. The former Fifth Circuit held that Section 702 divests the district court of jurisdiction only if the religious educational institution discriminated on the basis of religion, not on the basis of gender. *Id.* at 485-86. Because

says that this conclusion was based on the fact that Mississippi College was owned and operated by the Mississippi Baptist Convention and was "pervasively sectarian." *Id.* at 487. The *Mississippi College* court, however, looked at all the circumstances to determine whether Mississippi College was a "religious educational institution": 95% of the faculty were Baptist, 88% of the students were Baptist, the curriculum included study of the Bible, chapel was mandatory and the school expressly sought to provide "educational enrichment in a Christian atmosphere." *Id.* at 479. Plaintiff has cited to us no authority supporting his idea that some kind of rigid sectarianism is a requirement for the "religious educational institution" exemption, and we are aware of none.

Samford presented extensive evidence to establish that it is a "religious educational institution." Samford was founded as a "theological" institution in 1841 by the Alabama Baptist State Convention (the "Convention"). While Samford recently amended its charter to remove the Convention's power to elect the school's trustees, its trustees are now, must be, and always have been (with one historical exception) Baptist.

Samford receives roughly seven percent of its annual budget (over four million dollars) from the Convention. This sum is its largest single source of funding.[2] This money is also the largest

"[t]he district court did not make clear whether the individual employment decision complained of ... was based on the applicant's religion," the court remanded the case for further findings. *Id.*

[2]Like many colleges, the bulk of Samford's annual budget comes from tuition and fees.

amount (from a single source) received by a Baptist college in the United States. Samford reports financially to both the Convention and the Alabama Baptist State Board of Missions and submits financial reports to the Convention's audit, budget and insurance committees. The audited financial statements are published in the Convention's annual proceedings, and both it and Samford's external audit are made available to all churches within the Convention. In addition, the school is a member of the Association of Baptist Colleges and Schools, which limits membership to Baptist educational institutions.

Before teaching religion courses at the school, all faculty must subscribe to the 1963 Baptist Statement of Faith and Message, which contains various "affirmations" and "commitments" to advancing Christianity. Both the faculty handbook and individual faculty contracts affirm this commitment, with termination as a potential penalty for failing to abide by it. Samford's charter designates its chief purpose as "the promotion of the Christian Religion throughout the world by maintaining and operating ... institutions dedicated to the development of Christian character in high scholastic standing." Samford's student handbook describes Samford's purpose this way: "to foster Christianity through the development of Christian character, scholastic attainment, and a sense of personal responsibility, ..." Furthermore, all students are required to attend chapel.

Both the Internal Revenue Service ("IRS") and the Department of Education recognize Samford as a religious educational institution and grant it exemptions on that basis. Plaintiff has

requested and received a minister's housing allowance from the IRS based on Samford's exemption.  In sum, Samford is doubtlessly a "religious educational institution."

Plaintiff further argues that Section 702 requires that Samford act pursuant to a specific religious policy, as opposed to "ad hoc acts of religious discrimination."  Plaintiff seeks to distinguish between the religious requirements of Samford as an institution and the religious views of the divinity school's dean. According to Plaintiff, the former constitute legitimate religious requirements with which he has complied, while the latter constitute religious discrimination.

Plaintiff argues that Samford must establish a "causal relationship" between a specific religious policy—such as a preference for a particular sect in hiring—and his termination. Plaintiff says that here the only pertinent policy is Samford's requirement that religion teachers subscribe to the 1963 Baptist Statement of Faith and Message.  As Plaintiff has so subscribed, he argues that no valid reason of religious policy can support the employment decision about which he complains.

Plaintiff has presented no authority for his view of an "institutional policy" requirement for the Section 702 exemption, and we are aware of none.  We think that the idea of institutional policy is not as narrow as Plaintiff seems to think it is;  we think Samford's policy includes its general purpose, principles, and tendencies as a religious institution.  We are also aware of no requirement that a religious educational institution engage in a strict policy of religious discrimination—such as always preferring

Baptists in employment decisions—to be entitled to the exemption.

This case comes down to this situation:  Plaintiff is not allowed to teach at the divinity school of a religious educational institution because his religious beliefs—as Plaintiff frankly admits—differ from those of the school's dean, the person selected by the religious educational institution to apply its policy and to lead the faculty at the divinity school.  The Section 702 exemption's purpose and words easily encompass Plaintiff's case; the exemption allows religious institutions to employ only persons whose beliefs are consistent with the employer's when the work is connected with carrying out the institution's activities.  To us, a teaching job in a divinity school of a religious educational institution is at the core of the Section 702 exemption:  the inherent purpose of such schools is the study of God and God's attributes.  We conclude that the exemption protects Samford in this case.[3]

B. *Owned, Supported, Controlled, or Managed by a Religious Association*

Section 703(e)(2) of Title VII provides as follows:

> [I]t shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a

---

[3]Plaintiff has cited many cases which he says support him: *E.E.O.C. v. Kamehameha Schs./Bishop Estate,* 990 F.2d 458 (9th Cir.1993);  *Little v. Wuerl,* 929 F.2d 944 (3d Cir.1991); *E.E.O.C. v. Townley Eng'g & Mfg. Co.,* 859 F.2d 610, 619 (9th Cir.1988);  *E.E.O.C. v. Fremont Christian Sch.,* 781 F.2d 1362 (9th Cir.1986);  *Rayburn v. General Conference of Seventh-day Adventists,* 772 F.2d 1164 (4th Cir.1985);  *E.E.O.C. v. Southwestern Baptist Theological Seminary,* 651 F.2d 277 (5th Cir. Unit A July 1981);  *Fike v. United Methodist Children's Home of Va., Inc.,* 547 F.Supp. 286 (E.D.Va.1982), *aff'd,* 709 F.2d 284 (4th Cir.1983).  None of these decisions, however, are at odds with the conclusion we reach today.

particular religion if such a school, college, university, or other educational institution or institution of learning is, in whole or substantial part, owned, supported, controlled, or managed by a particular religion or religious corporation, association, or society, ...

42 U.S.C. § 2000e-2(e).

Samford says that, even if its refusal to allow Plaintiff to teach at the divinity school were not covered by the religious educational institution exemption, it is entitled to an exemption as an educational institution substantially "owned, supported, controlled or managed by a particular religion or religious corporation, association, or society." Samford argues for a flexible interpretation of Section 703 and points to Samford's historical ties with the Convention, the fact that the Convention is the single largest contributor to the university, and that its Board of Trustees requires it to report to the Convention on all budgetary and operational matters. Plaintiff, on the other hand, says Samford is not "owned, supported, controlled, or managed" by a religious association because (1) the Convention no longer appoints trustees and (2) only seven percent of its budget comes from the Convention. Neither side cites precedents interpreting Section 703, and we are aware of no precedent that speaks to the issue of what it means to be "owned, supported, controlled, or managed" by a religious association. *See e.g. Pime v. Loyola University of Chicago,* 803 F.2d 351, 357 (7th Cir.1986) (Posner, J., concurring) ("Is the combination of a Jesuit president and nine Jesuit directors out of 22 enough to constitute substantial control or management by the Jesuit order? There is no case law pertinent to this question; the statute itself does not answer it;

corporate-control and state-action analogies are too remote to be illuminating; and the legislative history, though tantalizing, is inconclusive.") (internal citations omitted).

Section 703 is written in the disjunctive and requires only that a college be—"in whole or substantial part"—"owned, supported, controlled *or* managed" by a religious association. Without addressing the other possibilities, we conclude that Samford is "in substantial part" "supported" by the Convention.

"Substantial" is not defined by the statute. But the word *substantial* ordinarily has this meaning: "Of real worth and importance; of considerable value; valuable. Belonging to substance; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable. Something worthwhile as distinguished from something without value or merely nominal. Synonymous with material." Black's Law Dictionary, 1428 (6th ed. 1990) (internal citations omitted). Continuing support annually totaling over four million dollars (even in the abstract, no small sum), accounting for seven percent of a university's budget, and constituting a university's largest single source of funding is of real worth and importance. This kind of support is neither illusory nor nominal. So, the Convention's support is substantial. We hold—as an alternative to our Section 702 holding—that Samford qualifies as an educational institution which is in "substantial part" supported by a religious association and that the exemption protects Samford in this case.

### III.

We, as a federal court, must give disputes about what

particulars should or should not be taught in theology schools a wide-berth.  Congress, as we understand it, has told us to do so for purposes of Title VII.  Also, such a construction allows us to avoid the First Amendment concerns which always tower over us when we face a case that is about religion.

AFFIRMED.