Laura J. HOPKINS, Plaintiff,

v.

WOMEN'S DIVISION, GENERAL BOARD OF GLOBAL MINISTRIES, the United Methodist Church, et al., Defendants.

No. CIV.A. 00–1064(RBW).

United States District Court, District of Columbia.

Dec. 12, 2002.

12(b)(6). The plaintiff brings this cause of action pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, (2000) ("Title VII"), 42 U.S.C. § 1981 (2000) ("Section 1981"), 42 U.S.C. § 1981(a) (2000) ("Section 1981(a)"), and 42 U.S.C. § 1983 (2000) ("Section 1983") and alleges: (1) employment discrimination based on religion, race, national origin, age and sex; (2) retaliation; (3) the creation of a hostile work environment; (4) wrongful discharge; (5) intentional and negligent infliction of emotional distress; (6) negligent hiring, supervision, and retention; and (7) defamation. Amended Complaint and Prayer for Jury Trial ("Compl.") at 9–13. Upon consideration of the parties' submissions and for the reasons set forth below, the Court must deny the defendants' motion to dismiss the plaintiff's race discrimination claims under Title VII and Section 1981 because, contrary to the defendants' assertion, she has sufficiently pled an adverse action. However, the Court must grant the defendants' motion to dismiss the plaintiff's religious discrimination claim, because it is barred by the religious entities exception of Title VII, and all of her remaining claims because she has failed to respond to the defendants' motion to dismiss those claims and therefore this Court will treat those claims as conceded.

## I. *Factual Background*

A brief description of the defendants, all affiliates of the United Methodist Church ("the Church"), is a necessary predicate prior to addressing the facts of this case.

### (A) *The United Methodist Church*

Each of the defendants are "entities and affiliates of the Church ..." *Id.* at ¶ 7. Within the Church, "the main legislative and policymaking body is a quadrennial General Conference." Defendants' Motion to Dismiss ("Defs.' Mot.") at 4. The

John O. Iweanoge, Jr., Law Office of John O. Iweanoge, Arlington, VA, for the Plaintiff.

Frank C. Morris, Jr., Brian Steinbach, Allen Roberts, Epstein Becker & Green, P.C., Washington, for the Defendants.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court upon defendant's motion to dismiss the plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

Church's General Conference has established general boards, including defendant General Board of Global Ministries ("General Board"), "to carry out assigned functions of program, administration, and/or service." *Id.* at 6 (quoting *The Book of Discipline of The United Methodist Church* (Harriet Jane Olson, ed., 2000) ("*Book of Discipline*")[1] at ¶ 703). The *Book of Discipline* "sets forth various responsibilities and objectives for Defendant General Board, involving such matters as missionary work of various types, ministering to human need, expressing the concerns of women, etc."[2] *Id.* (citing *Book of Discipline* at ¶¶ 1302–03). Defendant Women's Division of the General Board ("Women's Division") has

> responsibilities [that] include such matters as securing funds 'for the support of the program of the Church through the General Board of Global Ministries;' involving women in church activities; enlisting women in activities 'that have a moral and religious significance of the public welfare and that contribute to the establishment of a just global society;' and recommending programs and policies to United Methodist Women.

*Id.* at 6–7 (quoting *Book of Discipline* at ¶ 1318). Finally, Defendant United Methodist Women is an auxiliary to the Women's Division with a mission "to promote its work in accordance with the program and policies of the Women's Division ..." *Book of Discipline* at ¶ 533.

### (B) *Factual Background of This Case*

The plaintiff, a Native American female, who is not a member of the Church, was employed in the Women's Division as an Executive Secretary for Economic Justice from June 14, 1996 until June 18, 1999. Compl. at ¶ 8; Defs.' Mot. at 7. According to the plaintiff, shortly after she began working for the Women's Division she voiced her "concerns" to her immediate supervisor about what she describes as an "unwritten job requirement that executive level staff ... were to participate in United Methodist worship, devotions and or prayer services." Compl. at ¶ 11. The plaintiff allegedly continued to complain that such attendance at the Church's religious services was contrary to her own religious beliefs and in 1998 she began to either not attend or arrived late to these religious services. *Id.* at ¶ 12. During this time period, defendants allegedly required the plaintiff "to increasingly write and develop resources and participate in meetings or exercises that involved advance use and understanding of Biblical scripture and many United Methodist, [sic] multimedia resources." *Id.* at ¶ 13. The plaintiff states that she "periodically ...

---

1. The *Book of Discipline* is the book of law of The United Methodist Church. Defs.' Mot. at 4 (citing *Book of Discipline*, Episcopal Greetings).

2. The *Book of Discipline* provides that:

> There shall be a General Board of Global Ministries, hereinafter referred to as the board, the purpose of which is found within the expression of the total mission of the church. It is a missional instrument of The United Methodist Church, its annual conference, missionary conferences, and local congregations in the context of a global setting.

> The Church in mission is a sign of God's presence in the world. By the authority of God and the power of the Holy Spirit, the Church:
>   1. Joins God's mission to reclaim, restore, and redeem the life of all creation to its divine intention;
>   2. Confesses by word and deed the redeeming activity of God in Christ among the whole human family;
>   3. Seeks to embody and realize the potential of new life in Christ among all human beings; and
>   4. Looks forward in faith and hope of the fulfillment of God's reign and the completion of God's mission.

indicated to her supervisor ... that she found a few of the [aforementioned] tasks unpleasant or difficult based either upon her religion, race or ethnicity, or national origin." *Id.* at ¶ 14. In addition, the plaintiff claims that while several of her peers were experts in matters related to "Native American and indigenous peoples[,]" her supervisor assigned her to tasks related to these issues. *Id.* The plaintiff also asserts that she "repeatedly made requests to her supervisor for necessary office equipment to carry out her job function tasks ... and to have support staff disciplined for poor job performance." *Id.* at ¶ 15. Beginning in the middle of 1997, the plaintiff allegedly brought complaints of discrimination to her supervisor, who promised remedial action, but according to the plaintiff her claims were ignored. *Id.* a ¶¶ 16–17. Then, in the middle of June 1999, the plaintiff was terminated from her job for insubordination, which, according to plaintiff, violates the defendants' "own employment policies and guidelines[,]" *id.* at ¶ 22, and allegedly was in response to complaints she lodged with the defendants' "leadership personnel" about the inaction by her immediate supervisor towards her prior claims, *id.* at ¶ 20. The plaintiff claims that the defendants "manufactured [a] reason to terminate [her] based upon her inability to attend two back-to-back meetings." *Id.*

## II. *Standards of Review*

### (A) *Rule 12(b)(1)*

█ Federal Rule of Civil Procedure 12(b)(1) requires the plaintiff to bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain her claims. Fed.R.Civ.P. 12(b)(1); *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001) (holding that the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); *Pitney Bowes, Inc. v. United States Postal Serv.,* 27 F.Supp.2d 15, 18 (D.D.C.1998); *Darden v. United States,* 18 Cl.Ct. 855, 859 (Cl.Ct.1989). While the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), because the plaintiff has the burden of proof to establish jurisdiction, the " 'plaintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police,* 185 F.Supp.2d at 13–14 (citation omitted). Finally, the Court notes that in deciding a 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint but may consider material outside of the complaint in an effort to determine whether the court has jurisdiction in the case. *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 n. 3 (D.C.Cir.1997); *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987); *Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986); *Grand Lodge of Fraternal Order of Police,* 185 F.Supp.2d at 14.

### (B) *Rule 12(b)(6)*

█ On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2

L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal*, 16 F.3d at 1276. In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is able to only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice. *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624–25. The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

## III. *Legal Analysis*

◼ At the outset, this Court must address the fact that the plaintiff has failed to respond to some of the assertions raised in the defendants' motion to dismiss. Specifically, the plaintiff has only responded to the defendants' motion to dismiss her race discrimination claims that have been brought pursuant to Title VII and Section 1981 and her religious discrimination claim pursuant to Title VII.[3] This Court's Local Rule 7.1(b) states:

> Within 11 days of the date of service or at such other time as the court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the court may treat the motion as conceded.

It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded. *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C.Cir.1997); *Stephenson v. Cox*, 223 F.Supp.2d 119, 121 (D.D.C.2002). The District of Columbia Circuit has stated that "the discretion to enforce ... [R]ule [7.1(b) ] lies wholly with the district court", *Bender*, 127 F.3d at 67–68 (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C.Cir.1997)), and noted that the Circuit "ha[s] yet to find that a district court's enforcement of this rule constituted an abuse of discretion", *id.* (citations omitted). Therefore, because the plaintiff has failed to address the defendants positions that certain claims in the complaint should be dismissed, the Court will treat those claims as conceded. Accordingly, the Court will consider only the plaintiff's religious discrimination claim under Title VII and her race discrimination claims under Title VII and Section 1981.

### (1) *Is the Plaintiff's Religious Discrimination Claim under Title VII Barred?*

Section 702(a) of Title VII provides a specific exemption from Title VII's cover-

---

**3.** The plaintiff has failed to address the following claims that the defendants have moved to dismiss: All claims against defendant United Methodist Women, United Methodist Church in Counts I, II and III; all the national origin, sex, and age discrimination, retaliation and hostile environment claims under Title VII in Counts I, II and III; all claims under 42 U.S.C. § 1981a and all the religious, national origin, sex and age discrimination, retaliation and hostile environment claims under 42 U.S.C. § 1981 in Count IV; all claims in Count V (discrimination under 42 U.S.C. § 1983); all claims in Count VI (wrongful discharge); all claims in Count VII (intentional or negligent infliction of emotional distress); all claims in Count VIII (negligent hiring, supervision, and retention); and all claims in Count IX (defamation).

age for religious institutions, stating that "[t]his subchapter shall not apply … to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e–1(a). Thus, the defendants assert that the plaintiff's Title VII religious discrimination claim must be dismissed because they are religious entities exempt from Title VII's coverage. Defs.' Mot. at 11–14. In response, the plaintiff claims that this exemption only applies if the "organization makes its employment decision upon religious basis or criteria … [and] because the alleged religious discrimination occurred after Plaintiff was hired and not during the hiring process" the religious institution exemption is not applicable.[4] Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n") at 8.

This Court must agree with the defendants that "the exemption of Section 702(a) quite clearly applies to all forms of employment decisions, not just the initial hiring decision …" Reply at 5. In *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 624 (6th Cir.2000), the Sixth

Circuit stated that "[t]he decision to employ individuals 'of a particular religion' under § 2000e–1(a) and § 2000e–2(e)(2) has been interpreted to include the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer." The plaintiff's religious discrimination claim in *Hall* arose from her termination due to a conflict of interest between the church that she attended and the defendant religious college where she was employed. This conflict of interest centered around the fact that her church "condoned homosexual lifestyles and [the defendant college's] clear denunciation of such alternative lifestyles …" *Id.* at 622. The Sixth Circuit focused its analysis on whether the defendant college was a religious educational institution within the meaning of Section 702(a). Having concluded that the defendant was such an organization, the *Hall* Court found that the organization "was exempt from the Title VII prohibition against discrimination based on religion" and thus the plaintiff's religious discrimination claim arising out of her termination was not justiciable. *Id.* at 625. Thus, the Sixth Circuit concluded that Section 702(a) barred religious discrimination claims for

---

4. The Court notes that the plaintiff is not arguing that the defendants are precluded from raising Section 702(a) as an exemption to a Title VII claim because the defendants' requirement that she attend religious services is unrelated to her employment. Thus, this Court is not presented with, and need not address, the more difficult question whether a religious institution can take adverse action against employees regardless of their positions by requiring them to participate in religious related activities that are wholly unrelated to their work related responsibilities, *e.g.,* terminating a janitorial worker who refuses to attend the employer's religious services. Thus, the breadth of the religious institution exception in regard to religious related activities an employee can be required to participate in is not before this Court, as the plaintiff only challenges whether the exception applies to the post-hiring aspects of the employer/employee relationship. *See, e.g., Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991) (reading the religious exemption broadly and concluding that religious organizations may employ only individuals who share their religious belief "whether or not … [the] individual plays a direct role in the organization's 'religious activities.'" The court relied on Congress' 1972 amendment to Section 702(a) as support for its position, which it concluded was intended to permit religious institutions "to employ only persons whose beliefs and conduct are consistent with the employer's religious precepts.").

acts committed after hiring.[5]

The Eleventh Circuit has also had the occasion to examine the religious institution exemption embodied in Section 702(a) of Title VII. In *Killinger v. Samford University*, 113 F.3d 196 (11th Cir.1997), the plaintiff brought a religious discrimination claim against the defendant university as a result of his removal as a professor of the defendant's divinity school because of a disagreement with the dean of the divinity school regarding their respective theological views.[6] As the Sixth Circuit did in *Hall*, the *Killinger* Court focused on whether the defendant university was a religious educational institution. Having concluded that the defendant was a religious institution, the Eleventh Circuit held that "Section 702 exemption's purpose and words easily encompass Plaintiff's case; the exemption a lows religious institutions to employ only persons whose beliefs are consistent with the employer's when the work is connected with carrying out the institution's activities." *Id.* at 200.

■ Although plaintiff asserts otherwise, it is clear that religious discrimination claims are barred with respect to the entire realm of the employment arena and not just the actual hiring of individuals. While plaintiff cites *EEOC v. Pacific Press*, 676 F.2d 1272 (9th Cir.1982) and *Boyd v. Harding Academy of Memphis, Inc.*, 887 F.Supp. 157 (W.D.Tenn.1995), for the proposition that Title VII's exemption for religious entities "only applies if the religious entity or organization makes its employment decision upon religious basis or criteria", Pl.'s Opp'n at 8, these cases do not support her proposition. In *Pacific Press*, the plaintiff brought a Title VII claim against a religious entity for sex

discrimination and retaliation because of her discharge, which she alleged occurred due to her filing the discrimination charges. 676 F.2d at 1274–75. The Ninth Circuit examined the legislative history of Title VII and concluded that religious entities are only protected against religious discrimination claims and "are not immune from liability for discrimination based on race, sex, national origin, or for retaliatory actions against employees who exercise their rights under the statute." *Id.* at 1276. The plaintiff also cites the district court's decision in *Boyd*, 887 F.Supp. at 157, because she apparently fails to appreciate that the Sixth Circuit subsequently affirmed that case in a published opinion. *See Boyd v. Harding Academy of Memphis, Inc.*, 88 F.3d 410 (6th Cir.1996). In *Boyd*, the plaintiff brought a Title VII claim against the defendant religious educational institution for pregnancy discrimination. Commenting on Title VII's religious exemptions, the Sixth Circuit stated that Section 702(a) does not "exempt religious educational institutions with respect to all discrimination. It merely indicates that such institutions may choose to employ members of their own religion without fear of being charged with religious discrimination. Title VII still applies, however, to a religious institution charged with sex discrimination." *Id.* at 413. It is clear that both *Pacific Press* and *Boyd* simply stand for the proposition that while religious discrimination claims are exempt from Title VII under Section 702(a), other types of discrimination prohibited by Title VII are not.

In this case, there is no dispute that the defendants are religious entities within the

---

5. The *Hall* Court also found that this "statutory exemption[] from religious discrimination claims under Title VII cannot be waived by either party." 215 F.3d at 625.

6. The plaintiff remained as a professor in the institution's undergraduate university. *Id.* at 198.

meaning of Section 702 of Title VII. Thus, as the plaintiff simply asserts that the religious entities exception to Title VII is not applicable to her circumstances because she opines that it only applies at the hiring stage, a position which the Court has rejected for the reasons set forth above, the Court must dismiss the plaintiff's Title VII religious discrimination claim.

### (2) Has the Plaintiff Failed to State a Claim of Race Discrimination under Title VII and Section 1981?

■ To satisfy the pleading requirements for racial discrimination claims under either Title VII or Section 1981, a plaintiff's complaint must comply with Federal Rule of Civil Procedure 8 and therefore must simply contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2); see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114–15 (D.C.Cir.2000). In Conley, the Supreme Court stated that "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests ..." 355 U.S. at 47–48, 78 S.Ct. 99. The District of Columbia Circuit in Sparrow summarized its viewpoint on the pleading requirements of race discrimination claims stating that "[b]ecause racial discrimination in employment is a claim upon which relief can be granted ... [,] 'I was turned down for a job because of my race' is all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6)." 216 F.3d at 1115 (quoting Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir.1998) (internal quotations omitted)).

■ While the defendant is correct that, notwithstanding the liberal pleading standard, a plaintiff "can plead himself out of court by alleging facts that render success on the merits impossible[,]" Sparrow, 216 F.3d at 1116, this Court finds that the plaintiff has sufficiently pled her race discrimination claims under both Title VII and Section 1981. Although the plaintiff's several claims may be inarticulately drafted, this Court is unable to state that it is "beyond doubt" that she can prove no set of facts in support of her race discrimination claims. See Conley, 355 U.S. at 45–46, 78 S.Ct. 99. This is because she alleges that beginning in 1997 and until her termination, she

> brought mounting discriminatory complaints of a disparate treatment nature to her immediate supervisor's attention ... [and] pleaded with the supervisor to take action on an abusive work environment situation, along with calling on the supervisor to have staff [ ]cease unwelcome inquiry about her race or ethnicity, national origin, and religious affiliation or practices.

Compl. at ¶ 16. The plaintiff went on in her complaint to explain that

> "most offenses regarding [her] terms and conditions of work were increasingly grounded upon discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 1981 and 1981a in regard to race or ethnicity, national origin, religion and sexual harassment, besides concern for violations under 42 U.S.C. Section 1983."

Compl. at ¶ 18. Moreover, she states that she was terminated in June 1999

> after she had again urgently sought Defendants['] leadership personnel to resolve complaints that her supervisor would not address and had instructed Plaintiff to keep confidential. Defendants thus ... manufactured [a] reason

to terminate Plaintiff based upon her inability to attend two back-to-back meetings, furthermore dismissing her claim that the inability was brought about by her long unresolved, stressful struggle with her supervisor over the gross insubordination and possibly fraudulent behavior of a support staff person the Plaintiff was made to supervise.

Compl. at ¶ 20. While the defendants are correct that an employment action must have "materially adverse consequences affecting the terms, conditions or privileges of employment[,]" Reply at 10 (quoting *Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir.1999)), and that many of the plaintiff's complaints may not themselves be actionable injuries (*i.e.,* defendants' failure to discipline one of the plaintiff's co-employees and denial of access to equipment necessary for the performance of her job), it is apparent that the plaintiff is claiming that her termination, purportedly for failing to attend certain meetings and to attend other meetings timely, was a pretext for concealing that she was subjected to race discrimination during the course of her employment and that her termination was related to her supervisor's failure to act on her long-standing complaints of race discrimination. This is all that the plaintiff must allege to survive a motion to dismiss under Rule 12(b)(6) as to all of her Title VII and Section 1981 race discrimination claims, *i.e.,* that she was subjected to race discrimination during the course of her employment with the defendants and that she was subsequently terminated in retaliation for such complaints.[7]

---

7. Although on the record currently before the Court it seems doubtful that the plaintiff would prevail on a defense initiated summary judgment motion, this Court is nonetheless unable to say that it is "beyond doubt" that

## IV. *Conclusion*

For the aforementioned reasons, this Court must grant the defendants' motion to dismiss all of the plaintiff's claims except for her race discrimination claims that have been filed pursuant to Title VII and Section 1981 because it is unable to conclude that it is "beyond doubt" that she will be unable to prove those claims. The plaintiff's other claims must be dismissed, however, either because she has effectively conceded them by her silence or they are barred under Title VII's exemption which is applicable to religious entities.

plaintiff will not be able to show that she suffered racial discrimination under Title VII and Section 1981. *See Sparrow,* 216 F.3d at 1117.