**Lori KENNEDY, Plaintiff,**

v.

**VILLA ST. CATHERINE'S, INC., et al., Defendants.**

**Case No. PWG–09–3021 (WDQ).**

United States District Court,
D. Maryland,
Northern Division.

April 30, 2010.

Michael Joseph Hoare, Dennis Chong, Michael J. Hoare PC, Washington, DC, for Plaintiff.

Leslie A. Powell, Law Offices of Leslie A. Powell, Frederick, MD, for Defendant.

### MEMORANDUM AND ORDER

PAUL W. GRIMM, United States Magistrate Judge.

This Memorandum and Order addresses the Motion for Summary Judgment, Paper No. 16, that Defendant Villa St. Catherine's Inc. d/b/a St. Catherine's Nursing Center (the "Nursing Center") filed; Plaintiff Lori Kennedy's Opposition to Defendant's Motion for Summary Judgment, Paper No. 25; and the Nursing Center's Reply Memorandum in Support of its Motion for Summary Judgment, Paper No. 28. For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. This Memorandum and Order disposes of Paper Nos. 16, 25, and 28.

### I. BACKGROUND

Plaintiff was employed as a geriatric nursing assistant at the Nursing Center from 1994 until May 2007. 1st Am. Compl. ¶¶ 6–7, Paper No. 4. At work, she wore long skirts and covered her head. *Id.* ¶ 9.

According to Plaintiff, her clothes were a "function of her religion" as a member of the Church of the Brethren, and they "did not interfere with her professional responsibilities." *Id.* ¶¶ 8 & 17. Yet, Plaintiff claimed that the Nursing Center's Assistant Director of Nursing Services, later promoted to Director of Nursing Services, repeatedly commented on Plaintiff's garb. *Id.* ¶ 11. Specifically, Plaintiff alleged that the Director told her that her clothes were "inappropriate in a Catholic institution ... made the residents' family members uncomfortable, ... and that Plaintiff should conform to a more traditional mode of dress." *Id.* ¶ 12. The Director purportedly made these comments in front of Defendant's Administrator/CEO, who took no action. *Id.* ¶ 13. Defendant terminated Plaintiff's employment on May 17, 2007. *Id.* ¶ 18.

Plaintiff filed a Complaint in federal court on November 13, 2009.[1] Paper No. 1. As amended, the Complaint alleged unlawful harassment, retaliatory discharge and discriminatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (2003), 1st Am. Compl. ¶¶ 24, 26 & 27, claiming that Defendant's Director's misconduct was "pervasive and rendered Plaintiff's work environment hostile and/or abusive," and "caused Plaintiff to lose income and other monetary benefits of employment .... and to experience emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life." *Id.* ¶¶ 15 & 19–20. Plaintiff also claimed that Defendant's Director's misconduct was "outrageous, malicious, wanton, reckless and/or in willful disregard for Plaintiff's rights," entitling Plaintiff to attorney's fees and litigation costs. *Id.* ¶¶ 21, 22.

Defendant Nursing Center moved for summary judgment, arguing that Plaintiff failed to state a claim against the Nursing Center because the Nursing Center "is a religious organization [that] is exempt from Title VII's prohibition against employment discrimination based on religious beliefs under 42 U.S.C. § 2000e–1(a)." Def.'s Mot. 1. In opposition to Defendant's Motion for Summary Judgment on Counts I and II, Plaintiff insists that Title VII's religious organization exemption does not extend to harassment or retaliation for complaints about harassment. Pl.'s Opp'n 6, 10. While conceding that the Supreme Court concluded that "[w]orkplace harassment was ... within the ambit of Title VII," *id.* at 2, Plaintiff alleges: "A review of the history of [the exemption] does not reveal that Congress was interested in protecting a religious organization's ability to harass its employees, only the organization's ability to hire and fire persons in accordance with its religious principles." *Id.* (citing 110 Cong. Rec. 2585–90 (1964)). Plaintiff notes that Senator Erwin, who sponsored the 1972 amendment to the religious organization exemption (which extended the exemption to all activities of a religious organization, not just "religious activities"), said that " 'the only effect' " that the amendment would have " 'would [be] to exempt religious corporations, associations, and societies from the application of [Title VII] insofar as the right to employ people of any religion they see fit is concerned.' " *Id.* at 7 (quoting 118 Cong. Rec. 4503 (1972)). However, Plaintiff conceded that the Nursing Center is a religious institution and that summary judgment should be granted to Defendant on Count III. *Id.* at 1 & n. 2.

---

**1.** Plaintiff filed her Complaint against the Nursing Center and Ascension Health, but she filed a Stipulation of Dismissal with prejudice as to Ascension Health, Paper No. 13, which the Court approved on February 4, 2010, Paper No. 14.

On April 9, 2010, Defendant filed its reply to Plaintiff's opposition, contending that "[t]he religious organization exemption bars Kennedy's claims for retaliation and harassment in the same manner as her claim for discrimination." Def.'s Reply 2. As Defendant sees it, excluding harassment from the religious organization exemption "undermines the very purpose of the religious organization exemption to eliminate government interference with religious organizations with respect to religion." *Id.* at 4. Alternatively, Defendant claims that "if harassment claims were not included in the statute, there would be no basis for this Court's jurisdiction" over Count I. *Id.* at 4 n. 3.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is only proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir.2007) (citing Fed.R.Civ.P. 56(c)). The moving party bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir.1987). The Court considers the evidence in the light most favorable to the non-moving party. *Ricci v. DeStefano*, —— U.S. ——, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir.2009); *Dean v. Martinez*, 336 F.Supp.2d 477, 480 (D.Md.2004).

If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

Under Title VII, it is "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Further, 42 U.S.C. § 2000e–3(a) provides that it is unlawful for an employer "to discriminate against any individual ... because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." The aggrieved employee may file a civil action against his or her employer, after taking the appropriate steps before the Equal Employment Opportunities Commission. 42 U.S.C. § 2000e–5(f).

To be actionable under 42 U.S.C. § 2000e–2(a)(1), discrimination need not be "economic" or "tangible." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and quotation marks omitted). Rather, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated."

*Id.* at 21, 114 S.Ct. 367 (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal brackets and quotation marks omitted)). Thus, religious harassment that creates a "hostile working environment" is actionable under Title VII if the plaintiff shows that "the harassment was (1) unwelcome, (2) because of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer." *E.E.O.C. v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 313 (4th Cir.2008).

In this regard, federal courts and the EEOC have viewed religious harassment as "a form of religious discrimination prohibited under Title VII." *Fontana v. Johnny's Pizza House,* No. 07–2046, 2009 WL 1491182, at *3 (W.D.La. May 27, 2009); *see Rene v. MGM Grand Hotel, Inc.,* 305 F.3d 1061, 1071 (9th Cir.2002) (Hug, J., dissenting) (noting that harassment based on "race, color, religion, sex, or national origin" is "a type of discrimination on the job"); Guidelines on Harassment Based on Race, Color, Religion, Gender, National Origin, Age, or Disability, 58 Fed.Reg. 51266, 51267 (Oct. 1, 1993) (proposed 29 CFR §§ 1609.1 & 1609.2)[2] (stating that "harassment based upon race, color, religion, gender, age, or disability is egregious and prohibited by [T]itle VII" and that "the Commission believes it important to reiterate and emphasize that harassment on any of the bases covered by the Federal antidiscrimination statutes is unlawful") (footnote omitted); *see also* EEOC COMPLIANCE MANUAL § 12: *Religious Discrimination* (July 22, 2008), *available at* http://www.eeoc.gov/policy/docs/religion.html ("Some charges of religious discrimination may raise multiple claims, for example re-

quiring analysis under disparate treatment, harassment, and denial of reasonable accommodation theories of liability."). Indeed, "[h]arassment has been recognized as a form of discrimination for many years, despite the fact that it is not specifically mentioned in any of the legislation banning employment discrimination." ABIGAIL COOLEY MODJESKA, 1 EMPLOYMENT DISCRIMINATION LAW § 1.5 (3d ed. 2009–10 Cum. Supp.); *see* H.R. No. 102–40(II), at 2, 28 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 694, 695, 721 (characterizing harassment as a form of discrimination).

■ In at least some instances, Title VII does not subject religious institutions to liability for religious discrimination. *See* 42 U.S.C. § 2000e–1(a). 42 U.S.C. § 2000e–1(a) provides that Title VII of the Civil Rights Act of 1964, as amended in 1972,

> shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

This is a narrow exception; it does not permit religious institutions to discriminate based on gender, race, or national origin. *Rayburn v. Gen. Conference of Seventh–Day Adventists,* 772 F.2d 1164, 1166–67 (4th Cir.1985). The issue before the Court is whether 42 U.S.C. § 2000e–1(a) exempts a religious institution from liability when the religious discrimination it purportedly commits takes the form of religious harassment.

---

**2.** The EEOC withdrew the proposal "in the face of opposition from members of Congress and from various religious organizations concerned about potential First Amendment problems with regard to extending the guidelines to cover religion." LEX K. LARSON, 3 EMPLOYMENT DISCRIMINATION § 55.05 n. 3 (2d ed. 2009).

This Court begins with the plain language of the statute to "enact the intent of the legislature in interpreting [the] statute." *Antonio v. Security Servs. of Am., LLC,* No. AW–05–2982, 701 F.Supp.2d 749, 763, 2010 WL 1266729, at *9 (D.Md. March 31, 2010); *see Wash. Gas Light Co. v. Prince George's County Council,* No. DKC–08–0967, 2010 WL 1375371, at *2 (D.Md. March 26, 2010) (same). The Fourth Circuit has said: "It was open to Congress to exempt from Title VII the religious employer, not simply one basis of employment, and Congress plainly did not." *Rayburn,* 772 F.2d at 1166–67. But, the parameters of that basis—religious discrimination—are less lucid. When, as here, the statute's meaning is unclear, " 'the court looks to the legislative history, prior case law, the purposes upon which the statutory framework was based, and the statute as a whole.' " *Antonio,* 701 F.Supp.2d at 764, 2010 WL 1266729, at *10 (quoting *Bost v. State,* 406 Md. 341, 958 A.2d 356, 361 (2008)).

The Fourth Circuit summarized the legislative history as follows:

The original Act passed by the House in 1964 excluded religious employers from coverage altogether, H.R.Rep. No. 914, 88th Cong., 1st Sess. (1964), *reprinted in* 1964 *U.S. Cong. & Admin. News,* 2355, 2391, 2402. The final version excluded such employers only with respect to discrimination based on religion, and then only with respect to persons hired to carry out the employer's "religious activities." P.L. 88–352, Title VII, § 702, 78 Stat. 255 (July 2, 1964), *reprinted in* 1964 *U.S. Cong. & Admin. News* 287, 304. In 1972 the statute was amended to delete the word "religious," P.L. 92–261 § 3, 86 Stat. 103 (March 24, 1972)....

*Rayburn,* 772 F.2d at 1167. The 1972 amendment "broadened [the exemption] to allow such religious preference regardless of the particular job which the individual is being considered." 118 Cong. Rec. 4941 (1972).

*[B]ut Congress specifically rejected proposals to broaden further the scope of the exemption.* Subcommittee on Labor of the Committee on Labor and Public Welfare of the United States Senate, Legislative History of the Equal Employment Opportunity Act of 1972 (Comm. Print 1972), at 1229–1230, 1258–1260. To the contrary, the analysis pertaining to § 702 states clearly that "Such organizations remain subject to the provisions of Title VII with regard to race, color, sex or national origin." Section–by–Section Analysis of H.R. 1946, the Equal Employment Opportunity Act of 1972, *reprinted in id.* at 1844, 1845.

*Rayburn,* 772 F.2d at 1167 (emphasis added).

Additionally, the overall purpose of the 1972 amendment was "to preserve the statutory power of sectarian schools and colleges to discriminate on religious grounds in the *hiring* of all their employees." *King's Garden, Inc. v. Fed. Commc'ns Comm'n,* 498 F.2d 51, 54 (D.C.Cir.1974) (emphasis added). Bill sponsor Senator Allen explained that the amendment would "say to the people who want so greatly to expand the field of operations of the EEOC, 'Do not touch the colleges. Do not try to take over the method by which the colleges and schools throughout the country are educating the young people of the country.' " 118 Cong. Rec. 947.

■ It is true that the 1972 amendment to Title VII expanded the scope of the exception to cover religious institutions' employment of individuals "to perform work connected with" any of the institutions' activities, not only its religious activi-

ties, so as to, as Senator Erwin said in sponsoring for the amendment, "take the political hands of Caesar off of the institutions of God." 118 Cong. Rec. 4503. But, the legislative history also indicates that Congress only intended the amended exception to exempt religious institutions from Title VII "insofar as the *right to employ* people of any religion they see fit is concerned." [3] *Id.* (quoting Sen. Ervin) (emphasis added). And, the Supreme Court has stated that "Congress' purpose was to minimize governmental 'interfere[ence] with the *decision-making process* in religions.'" *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints v. Amos,* 483 U.S. 327, 336, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (emphasis added) (quoting *Amos v. Corp. of the Presiding Bishop of Church of Jesus Christ of Latter–Day Saints,* 594 F.Supp. 791, 812 (D.Utah 1984)).

■ Although neither the parties nor the Court in its research has identified case law that addresses the precise question presented here—whether the exemption applies to alleged religious harassment by a religious institution [4]—case law is in accord with the legislative history that the exemption applies to religious institutions' employment decisions made on religious grounds. *E.g., Petruska v. Gannon Univ.,* 462 F.3d 294, 303 (3d Cir.2006) (Title VII "exempts religious entities ... from its nondiscrimination mandate to the extent that an *employment decision* is based on an individual's religious preferences.") (emphasis added); *Hall v. Baptist Mem'l Health Care Corp.,* 215 F.3d 618, 623 (6th Cir.2000) ("In recognition of the constitutionally-protected interest of religious organizations in making religiously-motivated *employment decisions,* ... Title VII has expressly exempted religious organizations from the prohibition against discrimination on the basis of religion."); *Rayburn,* 772 F.2d at 1166 (stating that "the language of § 702 makes clear that religious institutions may base relevant hiring decisions upon religious preferences" and that "[t]he statutory exemption applies to one particular reason for employment decision—that based upon religious preference"); *Saeemodarae v. Mercy Health Servs.,* 456 F.Supp.2d 1021, 1034 (N.D.Iowa 2006) (citing *Hall,* 215 F.3d at 623); *see also Wechsler v. Orthodox Union,* No. 06 Civ. 7196, 2009 WL 29596, at *4 (S.D.N.Y. Jan. 5, 2009) (addressing complaint that religious organization/employer discriminated against an employee

---

3. The debate statements of the legislator who sponsored the language that Congress enacted "are an authoritative guide to the statute's construction." *North Haven Bd. of Ed. v. Bell,* 456 U.S. 512, 526–27, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982); *see FEA v. Algonquin SNG, Inc.,* 426 U.S. 548, 564, 96 S.Ct. 2295, 49 L.Ed.2d 49 (1976) (stating that sponsor's statements "deserv[e] to be accorded substantial weight").

4. In *Hopkins v. Women's Division, General Board of Global Ministries,* 238 F.Supp.2d 174 (D.D.C.2002), in which the court characterized the issue before it as "whether the exception applies to the post-hiring aspects of the employer/employee relationship," *id.* at 179 n. 4, the court reached the general conclusion that "religious discrimination claims

are barred with respect to the entire realm of the employment arena and not just the actual hiring of individuals," *id.* at 180. However, the court was not considering claims of religious harassment; the plaintiff's claim was for religious discrimination based on her employer's requirement that employees attend religious services and its imposition of tasks involving scripture, which the plaintiff found "unpleasant." *Id.* at 176–77. Moreover, elsewhere in the opinion, the court's language was in keeping with other case law that focused on employment decisions. *Id.* at 179 ("'the exemption of Section 702(a) quite clearly applies to all forms of *employment decisions,* not just the initial hiring decision ....'") (quoting defendants' reply) (emphasis added).

"by refusing to assign him work on Fridays because he is an Orthodox Jew" (i.e., in an employment decision), and concluding that "analysis of [employee's] religious discrimination claim, grounded on alleged conflicts between the demands of his employer, which he admits to be a religious organization, and his religious observance, would involve the Court in the type of religious controversy that Section 702 seeks to avoid," and therefore religious organization was exempt under § 2000e–1(a)). While the effect of § 2000e–1(a) may be that other forms of discrimination legitimately may come into play in a religious institution's "decision-making process" and its "right to employ" individuals based on religion, no case cited by the parties or located by the Court's research, and certainly not the above-quoted legislative history, has held that religious *harassment* has a legitimate role in employment decisions. Put another way, while 42 U.S.C. § 2000e–1(a) may give religious institutions carte blanche in considering religion in deciding whom to employ, promote, or terminate, it does not follow that it gives them free rein to harass an individual once hired, even on religious grounds. *See Amos,* 483 U.S. at 336, 107 S.Ct. 2862; 118 Cong. Rec. 4503.

■ Moreover, in matters of statutory construction, "[t]he administrative interpretation of the Act by the enforcing agency is entitled to great deference." *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (relying on EEOC Guidelines to interpret Title VII language); *see Adams v. Proctor & Gamble Mfg. Co.,* 678 F.2d 1190, 1192 n. 2 (4th Cir.1982) (relying on EEOC's interpretation of a section of Title VII "as reflected in its action in the case and its position formally taken as amicus on ...

appeal" because "Courts owe 'great deference to the interpretation given the statute by the officers or agency charged with its administration'"); *see also North Haven Bd. of Ed. v. Bell,* 456 U.S. 512, 522 n. 12, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) ("In construing a statute, [the Supreme Court] normally accords great deference to the interpretation, particularly when it is longstanding, of the agency charged with the statute's administration.") The EEOC "is the agency of the United States Government that is statutorily charged with the duty to administer, interpret and enforce Title VII of the Civil Rights Act of 1964." *E.E.O.C. v. Lutheran Family Services in the Carolinas,* 884 F.Supp. 1033, 1035 (E.D.N.C.1994); *see* 42 U.S.C. § 2000e–5(a) ("The Commission is empowered ... to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e–2 or 2000e–3 of this title."); § 2000e–4(g)(5) ("[The Commission shall have power] to make such technical studies as are appropriate to effectuate the purposes and policies of this subchapter and to make the results of such studies available to the public."). Therefore, the guidance provided in EEOC COMPLIANCE MANUAL § 2: *Threshold Issues* (May 12, 2000), *available at* http://www.eeoc.gov/policy/docs/threshold.html, and EEOC Dec. No. 83–6, 31 Fair Empl. Prac. Cas. (BNA) 1858, 1983 WL 22484 (March 7, 1983), is entitled to deference by this Court in resolving the issue presented here.

In EEOC Dec. No. 83–6, the Commission considered whether it had jurisdiction to hear an employee's claim of unlawful discharge, given the religious institution exemption, i.e., § 2000e–1(a), when the employee alleged that a religious institution "engaged in an unlawful employment practice ... by discharging [the employee] be-

cause of his religious beliefs."[5] 1983 WL 22484, at *1. The Commission stated that for the employer to prevail in its defense that the EEOC lacked jurisdiction, the Commission had to find that the employer was a religious institution, which it so found, and that "the term 'employment' as it is used in [§ 2000e–1(a) ] include[s] not only initial hiring decisions but also discharge decisions based on religious beliefs." *Id.* at *2. Noting that the Act does not define "employment," the Commission observed:

> The term is often used synonymously with 'hiring' in the legislative history and in the case law concerning the Section 702 exemption. However, ... the legislative history [does not] directly address[ ] the question of whether the term "employment"—and, consequently, the exemption—applies only to hiring or more broadly encompasses other terms and conditions of employment, including discharge.

*Id.* at *3 (footnotes omitted).

The Commission continued, *id.* (emphasis added):

> It thus becomes necessary to consider whether, in using the term "employment" to describe the exempt activity, Congress would have intended to create a situation in which a religious association would be permitted to initially hire an individual professing particular reli-

gious beliefs but would be precluded from subsequently discharging that individual if his/her beliefs changed and were no longer compatible with the religious doctrine of the employer. In the absence of external guidance or precedent, the logical answer is that such a result would not be in keeping with the intent of Congress in enacting the exemption contained in Section 702. *In enabling a religious organization to lawfully exercise a preference based on religion at least with regard to hiring decisions, Congress's intent was to allow such an organization to create and maintain a work force composed of individuals of compatible religious belief.*

The Commission concluded that "the term 'employment' in Section 702 of Title VII includes decisions to discharge as well as to hire where such decisions are based on an individual's religious beliefs," and therefore, "the discharge decision falls within the Section 702 exemption," and outside the jurisdiction of the EEOC. *Id.* at *3–4.

Notably, although the Commission stated that the employee claimed that "he was harassed and unlawfully discharged from his position" with a religious institution, it did not address harassment as a separate charge. And, the Commission expressly stated that it did "not reach a determination of whether the use of the term 'employment' provides an exemption

5. The EEOC decision predates *EEOC Compliance Manual § 2*, discussed *infra,* and court decisions stating that the exemption applies to religious institutions' decisions to terminate, or not to promote, based on religion. *E.g., Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir.2000) ("The decision to employ individuals 'of a particular religion' under § 2000e–1(a) and § 2000e–2(e)(2) has been interpreted to include the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer."); *Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir.1991) (concluding that discharg-

ing an employee for religious reasons and not rehiring her for those same reasons did "not violate Title VII's prohibition of religious discrimination" because "Congress intended the explicit exemptions to Title VII to enable religious organizations to create *and maintain* communities composed solely of individuals faithful to their doctrinal practices") (emphasis added); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F.Supp.2d 174, 179 (D.D.C.2002) (" 'the exemption of Section 702(a) quite clearly applies to all forms of employment decisions, not just the initial hiring decision' ") (quoting defendants' reply).

with regard to any other terms or conditions of employment." *Id.* at \*3 n. 6. Thus, although the Commission did not reach any conclusions—or even address— whether harassment fell within the scope of "employment" for purposes of the religious institution exemption, it is instructive that the Commission characterized the legislative intent as to "enable[e] a religious organization to lawfully *exercise a preference*" and "to allow [a religious] organization to *create* and *maintain* a work force composed of individuals of compatible religious beliefs." *Id.* at \*3. Unlike decisions to employ or fire based on religious beliefs, harassment is not a legitimate part of creation or maintenance of a workforce composed of individuals of compatible religious beliefs. Nor could Congress have considered it a legitimate way to "exercise a preference." *See id.* Moreover, seventeen years later, in *EEOC Compliance Manual § 2,*[6] the Commission stated definitively that the religious organization "exemption only applies to hiring and discharge, and does not apply to terms, conditions, or privileges of employment, such as wages or benefits." Clearly, "harassment" during employment affects the "condition" of employment.

■ Here, in Count I, Plaintiff alleges religious harassment in violation of Title VII by the Nursing Center. 1 st Am. Compl. ¶ 24. Specifically, Plaintiff complains that during her employment, her superiors criticized the attire she wore in adherence to her religious beliefs. *Id.* ¶¶ 11–12. The alleged harassment did not involve discriminatory employment decisions (e.g., a decision not to hire or promote, or a decision to terminate) that Congress intended to exclude from the purview of Title VII. *See* 118 Cong. Rec.

4503; EEOC Dec. No. 83–6, 1983 WL 22484, at \*3–4; EEOC Compliance Manual § 2. Although the underlying merits of Plaintiff's harassment claim are not raised in this motion, the Court concludes that Defendant is not entitled to judgment as a matter of law because a religious institution may be liable for religious harassment. *See* 42 U.S.C. §§ 2000e–1(a) & 2000e–2(a)(1). Therefore, Defendant's Motion for Summary Judgment as to Count I is DENIED.

■ In Count II, Plaintiff alleges retaliatory discharge in violation of Title VII, claiming that the Nursing Center "terminated Plaintiff's employment because she resisted, protested and complained" about the alleged harassment by the Nursing Center. 1st Am. Compl. ¶ 26. Because, as discussed *supra,* religious harassment by a religious institution is a violation of Title VII, and 42 U.S.C. § 2000e–3(a) makes it unlawful for an employer "to discriminate against any individual" for opposing a violation of Title VII, the Nursing Center may be liable under 42 U.S.C. § 2000e–3(a). Therefore, the Nursing Center is not entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment as to Count II is DENIED.

■ In Count III, Plaintiff alleges discriminatory discharge in violation of Title VII by the Nursing Center, claiming that "Defendant terminated Plaintiff's employment because of her religion." 1 st Am. Compl. ¶ 27. As noted, Plaintiff concedes that the Nursing Center is a religious institution and that summary judgment should be granted to Defendant on Count III. Pl.'s Opp'n 1 & n. 2. I agree. It is undisputed that the Nursing Center is a religious institution, *see id.;* Def.'s Mem.

---

6. The purpose of Section 2 is to "provide guidance and instructions for investigating and analyzing coverage, timeliness, and other threshold issues that are generally addressed when a charge is first filed with the EEOC." EEOC Compliance Manual § 2.

in Support of its Mot. for Sum. J. 2–4, Paper No. 16–1. Religious institutions are exempt from liability for discriminating "with respect to the employment of individuals of a particular religion. . . ." 42 U.S.C. § 2000e–1(a); *Smith v. Raleigh Dist. of N.C. Conf. of United Methodist Church*, 63 F.Supp.2d 694, 701 (E.D.N.C. 1999) ("religious institutions [may] discriminate based on religion or religious preferences"). Therefore, the Nursing Center is entitled to judgment as a matter of law, and Defendant's Motion for Summary Judgment as to Count III is GRANTED.

In sum, Defendant's Motion for Summary Judgment is DENIED as to Counts I and II and GRANTED as to Count III.