KING, Circuit Judge, dissenting:
I must respectfully dissent from the majority’s decision because it unnecessarily settles a novel and complex statutory issue, thereby contravening the fundamental principle of judicial restraint. In one fell swoop, the majority interprets the 42 U.S.C. § 2000e-l(a) exemption to shield religious organizations from every Title VII claim alleging either religious harassment or retaliation for opposing such harassment. Rather than solve the difficult problem of whether the exemption stretches that far, I would decertify and dismiss this 28 U.S.C. § 1292(b) interlocutory appeal, leaving the district court to answer the much simpler questions of whether Kennedy has adequately pleaded or can forecast sufficient evidence to prove a Title VII violation. If not, St. Catherine would be entitled to dismissal or summary judgment, and the issue of the exemption’s reach would be moot.[1]
*197 I.
It is generally understood that § 1292(b) of Title 28 “should be used sparingly.” Myles v. Laffitte, 881 F.2d 125, 127 (4th Cir.1989); see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (recognizing that use of § 1292(b) is reserved for “exceptional circumstances [that] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment” (internal quotation marks omitted)). That jurisdictional provision authorizes a district court, in rendering an otherwise unappealable order in a civil action, to state in writing that (1) “such order involves a controlling question of law as to which there is substantial ground for difference of opinion” and (2) “an immediate appeal from the order may materially advance the ultimate termination of the litigation.” 28 U.S.C. § 1292(b). If application is made to the appropriate court of appeals within ten days after the certification, the appellate court “may thereupon, in its discretion, permit an appeal to be taken from such order.” Id. Of course, the court of appeals may later dismiss the § 1292(b) appeal if it becomes apparent that review was improvidently granted. See, e.g., Wilson v. Ferrell, 738 F.2d 637, 638 (4th Cir.1984) (“Upon further consideration of the facts, issues, and course of proceedings to date in this action, we are of opinion that permission to appeal under 28 U.S.C. § 1292(b) was improvidently granted.”).
Kennedy alleged three claims against St. Catherine under Title VII — religious harassment, retaliatory discharge for opposing such harassment, and discriminatory discharge premised on her religion. St. Catherine filed an answer to the complaint and, before the parties had completed any discovery, moved for summary judgment asserting that the 42 U.S.C. § 2000e-l(a) exemption for religious organizations precludes all of Kennedy’s claims regardless of their merits. In response, Kennedy conceded that her discriminatory discharge claim was barred by the exemption but opposed the motion as to her harassment and retaliation claims. The district court denied summary judgment as to those two claims, concluding that the exemption did not apply. See Kennedy v. Villa St. Catherine’s, Inc., 709 F.Supp.2d 404 (D.Md.2010). Nevertheless, the court granted St. Catherine’s request for certification of a § 1292(b) interlocutory appeal. See Kennedy v. Villa St. Catherine’s, Inc., No. l:09-cv-03021 (D.Md. June 16, 2010) (the “Certification Order”).[2]
In concluding that a § 1292(b) appeal was appropriate, the district court identified the controlling question of law to be whether § 2000e-l(a) “exempts a religious institution from liability when the religious discrimination it purportedly commits takes the form of religious harassment.” Certification Order 2. The court also concluded that “substantial grounds for difference may be found by virtue of the strong public policy purpose served by” § 2000e-1(a). Id. at 4. And, over Kennedy’s objection that “the case might settle or summary judgment might be entered on other grounds,” the court surmised that immediate “appeal may lead to a possible terminus for the case.” Id. at 4-5.
Within ten days of the Certification Order’s entry, St. Catherine filed in this Court a petition for permission to appeal, *198 which we granted by order of July 14, 2010. Although I was a member of the panel that granted the petition, I am now convinced — with the benefit of full briefing and oral argument — that our action was improvident. Accordingly, as further explained below, I would dismiss the appeal and await additional district court proceedings.
II.
A.
Notwithstanding the possible applicability of the 42 U.S.C. § 2000e-l(a) exemption, it is far from clear that Kennedy’s religious harassment and retaliation claims can survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. As of yet, the parties have not conducted discovery, but the viability of Kennedy’s claims can be gauged from the operative First Amended Complaint of December 9, 2009 (the “Complaint”).[3]
According to the Complaint, Kennedy was employed as a geriatric nursing assistant at St. Catherine’s Nursing Center in Emmitsburg, Maryland, from 1994 through May 2007. See Complaint ¶¶ 3, 6-7. During that time, she wore “modest garb that include[d] long dresses/skirts and a cover for her hair” in reverence to her personal religious beliefs as a member of the Church of the Brethren. Id. at ¶¶ 8-9. Kennedy alleges that the Center’s Director of Nursing Services (while acting in that capacity and in a prior role as Assistant Director of Nursing Services) “subjected [Kennedy] to a course of conduct which included unwelcome, inappropriate and offensive comments regarding [her] religious garb.” Id. at ¶ 11. Notably, the Complaint specifies only that the alleged harassment “included comments that [Kennedy’s] garb was inappropriate in a Catholic institution,” that it “made the residents’ family members uncomfortable” and “made [Kennedy] stand out,” and that she “should remove her hair covering” and “should conform to a more traditional mode of dress.” Id. at ¶ 12. Those comments were uttered “in the presence of [the] Center’s Administrator/CEO[,] who did nothing to halt [them].” Id. at ¶ 13. Meanwhile, Kennedy protested “that the comments about [her] garb were unwelcome and offensive to her[,] and that her garb was a function of her religion and did not interfere with her professional responsibilities.” Id. at ¶ 17. Ultimately, St. Catherine “terminated [Kennedy’s] employment on May 17, 2007.” Id. at ¶ 18.
For success on her religious harassment claim, Kennedy must plead and be able to prove a hostile work environment, i.e., “that the harassment was (1) unwelcome, (2) because of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to [St. Catherine].” EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir.2008). The “severe or pervasive” element may be particularly troublesome for Kennedy, because it requires a showing that the environment was both subjectively and objectively hostile or abusive. Id. at 315. To satisfy that objective component, “the harassing ‘conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.’ ” Id. (alterations in original) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). Proof of “an employment atmosphere that is ‘permeated with discriminatory intimidation, ridicule, and insult’ ” will satisfy Kennedy’s burden, id. (quoting Harris v. Forklift Sys., Inc., 510 *199 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)), whereas a mere demonstration of “ ‘simple teasing, ofihand comments, and isolated incidents (unless extremely serious) will not,’ ” id. (quoting Faragher, 524 U.S. at 788, 118 S.Ct. 2275).[4]
It is highly questionable whether the Complaint sufficiently alleges the “severe or pervasive” element of Kennedy’s religious harassment claim. Although Federal Rule of Civil Procedure 8 “does not require ‘detailed factual allegations,’” it does demand that a complaint “contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). “[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not ‘show[n]’ — ‘that the pleader is entitled to relief.’ ” Id. at 1950 (alteration in original) (quoting Fed.R.Civ.P. 8(a)(2)). Here, the Complaint’s allegations raise the possibility that the comments about Kennedy’s religious garb created an atmosphere so abusive that they altered the conditions of her employment, but additional facts (as opposed to conclusory statements) would likely be necessary to show, objectively, that those comments were sufficiently severe or pervasive. Cf. Bonds v. Leavitt, 629 F.3d 369, 385 (4th Cir.2011) (affirming dismissal of race and gender harassment claim because the plaintiffs allegations “fall well short of alleging an abusive working environment”).
It is also unclear whether the alleged facts are adequate to sustain Kennedy’s claim of retaliation for opposing religious harassment. To prevail on her retaliation claim, Kennedy must show that (1) she “engaged in a protected activity,” (2) St. Catherine “acted adversely against [her],” and (3) her “protected activity was causally connected to [St. Catherine’s] adverse action.” Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir.1997). Kennedy asserts that she undertook a “protected activity” when she opposed the harassing comments made about her religious garb. See 42 U.S.C. § 2000e-3(a) (prohibiting discrimination against an employee “because he has opposed any practice made an unlawful employment practice by this title”). As discussed above, Kennedy’s religious harassment claim is of dubious merit. Kennedy might seek solace in the accepted proposition that § 2000e-3(a) “protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful.” EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir.2005). Importantly, however, “[b]ecause the analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law.” Jordan v. Alt. Res. Corp., 458 F.3d 332, 339 (4th Cir.2006). And it is not certain here that the Complaint provides enough facts to credit the reasonableness of Kennedy’s belief that the comments she protested rose to the level of unlawful harassment. Further questions remain for the summary judgment stage as to whether Kennedy’s discharge was “causally connected” to her protests against the comments; for example, St. Catherine may have possessed some other, non-retaliatory reason to terminate Kennedy’s employment.
*200 B.
Rather than wait for the district court to determine whether Kennedy has stated and can prove religious harassment and retaliation claims, the majority deems all such Title VII claims against religious organizations to be barred by the § 2000e-1(a) exemption. There is no principled reason to decide the exemption issue today, however, because “the statutory exemptions from religious discrimination claims under Title VII cannot be waived by either party.” See Hall v. Baptist Mem’l Health Care Corp., 215 F.3d 618, 625 (6th Cir.2000). Furthermore, “the cardinal principal of judicial restraint”'— “that if it is not necessary to decide more, it is necessary not to decide more”' — counsels against reaching the exemption issue before Kennedy’s claims are measured against the Rules 12(b)(6) and 56 standards. See Goodman v. Praxair, Inc., 494 F.3d 458, 476 (4th Cir.2007) (en banc) (Williams, C.J., concurring in part) (internal quotation marks omitted).
In recognition of the principle that “[mjoot questions require no answer,” Mo., Kan. & Tex. Ry. Co. v. Ferris, 179 U.S. 602, 606, 21 S.Ct. 231, 45 L.Ed. 337 (1900), courts have judiciously declined to entertain § 1292(b) appeals where the question certified may be mooted by further proceedings in the district court. See, e.g., Sandler v. E. Airlines, Inc., 649 F.2d 19, 20 (1st Cir.1981) (dismissing § 1292(b) appeal without addressing merits of question certified on scope of Title VII because, inter alia, it was unclear whether complaint stated cause of action); United States v. Rent -A-Homes Sys. of Ill., Inc., 602 F.2d 795, 797 (7th Cir.1979) (explaining that court had previously disallowed § 1292(b) appeal of district court order precluding monetary damages because, if “plaintiff fail[ed] to prove its case below,” damages issue would “never be reached” (internal quotation marks omitted)). Here, too, we will not have to address the question certified, on the scope of the § 2000e-l(a) exemption, if St. Catherine can otherwise prevail on a motion to dismiss or a motion for summary judgment.
Significantly, “[t]he potential for mootness takes on even greater weight ... when the question we may never have to address presents sophisticated and unprecedented questions.” Cf. Gen. Acquisition, Inc. v. GenCorp, Inc., 23 F.3d 1022, 1030-31 (6th Cir.1994) (concluding that interlocutory appeal was not properly certified under Federal Rule of Civil Procedure 54(b) given “significant possibility” that “novel and complex questions of state law presented on appeal” would subsequently “be rendered moot”). For, “[i]n keeping with notions of judicial restraint, federal courts should not reach out to resolve complex and controversial questions unnecessarily.” Id. (internal quotation marks omitted). The question presented in this § 1292(b) appeal is one of first impression in this Circuit with profound implications — one that probably need not be reached. As such, the majority issues what is effectively an advisory opinion construing a remedial statute to broadly preclude claims for relief.[5]
*201 I am loath to join the majority in its unwarranted endeavor and thus respectfully dissent.

. The majority, in Part III of its opinion, appears to misapprehend the essential predicate of my dissent. I do not contest our discretionary jurisdiction or seek to construct some doctrine of "statutory avoidance.” Rather, I am convinced that we should, in these circumstances, simply apply and exercise judicial restraint. In the words of the D.C. Circuit, "[i]f we do not decide it now, we may never need to. Not only does this rationale protect the expenditure of judicial resources, but it comports with our theoretical role as the governmental branch of last resort. Article III courts should not make decisions unless they have to.” Nat’l Treasury Emp. Union v. United States, 101 F.3d 1423, 1431 (D.C.Cir.1996) (citing Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 *197 (1984) (O'Connor, J.) (underscoring “the Art. Ill notion that federal courts may exercise power only in the last resort, and as a necessity” (internal quotation marks omitted))).

. The unpublished Certification Order is found at J.A. 72-76. (Citations herein to "J.A. -" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

. The Complaint is found at J.A. 7-11.

. Notably, at oral argument in this appeal, counsel for St. Catherine expressed confidence that, with the benefit of discovery, Kennedy’s claims would be defeated on the merits because St. Catherine “didn't harass her at all.”

. I fear the majority has decided the question certified without the proper factual context. See Paschall v. Kan. City Star Co., 605 F.2d 403, 406 (8th Cir.1979) ("Inherent in [the § 1292(b) ] requirements is the concept of ripeness.... The purpose of [§ ] 1292(b) is not to offer advisory opinions rendered on hypotheses which evaporate in the light of full factual development.” (internal quotation marks and alteration omitted)). The majority adopts a seemingly boundless interpretation of "employment” as more than "hiring and firing” even though it is unclear from the Complaint that Kennedy's employment was, in fact, affected apart from her termination. Interpreting the scope of the § 2000e-l(a) *201 exemption absent adequate factual development exceeds our judicial mandate. We decide cases on appeal based on the facts in the record before us.