**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LORI KENNEDY,

        *Plaintiff-Appellee,*

      v.

ST. JOSEPH'S MINISTRIES, INC., d/b/a
St. Joseph's Ministries,

        *Defendant-Appellant.*

No. 10-1792

ALLIANCE DEFENSE FUND; NATIONAL
ASSOCIATION OF EVANGELICALS,

        *Amici Supporting Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Paul W. Grimm, Magistrate Judge.
(1:09-cv-03021-PWG)

Argued: May 12, 2011

Decided: September 14, 2011

Before KING, SHEDD, and WYNN, Circuit Judges.

Reversed and remanded by published opinion. Judge Shedd
wrote the majority opinion, in which Judge Wynn joined.
Judge King wrote a dissenting opinion.

**COUNSEL**

**ARGUED:** Leslie A. Powell, LAW OFFICES OF LESLIE A. POWELL, Frederick, Maryland, for Appellant. Dennis Chong, MICHAEL J. HOARE, PC, Washington, D.C., for Appellee. **ON BRIEF:** Diana M. Schobel, Paul D. Flynn, LAW OFFICES OF LESLIE A. POWELL, Frederick, Maryland, for Appellant. Michael J. Hoare, MICHAEL J. HOARE, PC, Washington, D.C., for Appellee. Kevin Theriot, ALLI-ANCE DEFENSE FUND, Leawood, Kansas, for Amici Supporting Appellant.

**OPINION**

SHEDD, Circuit Judge:

Lori Kennedy filed a complaint under Title VII against her former employer, Villa St. Catherine, Inc. (St. Catherine),[1] alleging that it engaged in religious discrimination and retaliation against her. After the district court[2] denied St. Catherine's motion for summary judgment, St. Catherine filed this interlocutory appeal, contending that the plain language of 42 U.S.C. § 2000e-1(a), the religious organization exemption, bars Kennedy's claims. In answering the question that is properly before us, we agree with St. Catherine and, accordingly, reverse the district court's decision.

I.

St. Catherine is a tax-exempt religious organization which

---

[1]St. Catherine recently became St. Joseph's Ministries, Inc. We refer to the entity as "St. Catherine," its title at the time the relevant events in this action occurred.

[2]The parties agreed to proceed before a magistrate judge. For the purposes of this opinion, we treat the magistrate judge as the "district court."

operates a nursing-care facility in Emmitsburg, Maryland.[3] It conducts itself under the direction of the Daughters of Charity, a religious order within the Roman Catholic Church, and maintains its facility in accordance with Catholic principles by engaging in numerous religious exercises. For instance, prayers are read over the intercom several times a day, the facility holds Catholic Mass on Wednesdays, and communion is available daily. In addition, a crucifix is displayed on the wall of every resident's room. Statues of the Virgin Mary, Jesus, and St. Catherine's patron saint (St. Catherine Laboure) adorn the facility's landscape. St. Catherine provides new employees with a handout entitled "St. Catherine's Nursing Center Mission, Vision, and Values," which explains that "St. Catherine's Nursing Center is a family of faith rooted in the loving ministry of Jesus as healer, and in the Catholic tradition of service." (J.A. at 24, 31). Likewise, the employee handbook affirms St. Catherine's Catholic identity.

Against this backdrop, St. Catherine employed Kennedy from 1994 to 2007 as a geriatric nursing assistant. Kennedy is a member of the Church of the Brethren and, "as a matter of religious principle," wears "modest garb that includes long dresses/skirts and a cover for her hair." (J.A. at 8-9). At some point during Kennedy's employment, the Assistant Director of Nursing Services informed Kennedy that her attire was inappropriate for a Catholic facility and that it made residents and their family members feel uncomfortable. Kennedy informed the Assistant Director that her attire was a function of her religious beliefs and that she would not change it. Thereafter, Kennedy's employment was terminated on May 17, 2007.

In response, Kennedy filed this action, alleging claims

---

[3]Because we are reviewing the district court's denial of summary judgment to St. Catherine, we view the factual evidence in the light most favorable to Kennedy. *Walker v. Prince George's County*, 575 F.3d 426, 427 (4th Cir. 2010).

under Title VII for religious harassment, retaliatory discharge, and discriminatory discharge on the basis of religion. St. Catherine immediately moved for summary judgment,[4] arguing that as a "religious organization" it is exempt from Title VII's reach as to claims of religious discrimination. The district court agreed with St. Catherine that Kennedy's claim for discriminatory discharge was barred but concluded that her religious harassment and retaliation claims are cognizable under Title VII. St. Catherine requested that the district court certify the order for interlocutory appeal under 28 U.S.C. §1292(b), noting the potential broad-reaching effect of the ruling. The district court granted the request, and a panel of this court subsequently granted St. Catherine's petition for permission to appeal.[5]

## II.

On appeal, St. Catherine argues that the plain language of §2000e-1(a), the religious organization exemption, makes clear that Title VII does not apply to claims for religious harassment and retaliation against religious organizations.[6] We review such questions of statutory interpretation *de novo*.

---

[4]St. Catherine filed a motion for summary judgment, rather than a motion to dismiss, because it appended several documents indicating its religious character. While there has been no discovery on the merits of Kennedy's claims, there are no facts in dispute regarding the issue before us—indeed, Kennedy concedes that St. Catherine is a religious organization under Title VII.

[5]Although Kennedy opposed St. Catherine's request that the district court certify the order, she did not oppose St. Catherine's petition for permission to appeal before this court.

[6]St. Catherine also argues that the canon of constitutional avoidance should be applied to § 2000e-1(a). Because we believe the plain language supports St. Catherine's reading of the statute, we do not resort to this canon, although we note that the district court itself found First Amendment implications: "if this case marches forward to its ultimate resolution through trial, which in all likelihood would encompass testimony about religious beliefs, that would be the type of entanglement Congress intended to avoid by enacting the exemption." (J.A. at 75).

*United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010). "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If the statute is unambiguous, "our inquiry into Congress' intent is at an end, for if the language is plain and the statutory scheme is coherent and consistent, we need not inquire further." *William v. Gonzales*, 499 F.3d 329, 333 (4th Cir. 2007) (internal quotation marks omitted). "[I]n looking to the plain meaning, we must consider the context in which the statutory words are used because '[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole.'" *Ayes v. United States Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)).

With this legal framework in place, we turn to the issue before us.

### A.

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of," *inter alia*, an individual's "religion." 42 U.S.C. § 2000e-2(a)(1). Title VII also includes a retaliation provision that makes it unlawful for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). Title VII is not without bounds however, and has long included an exemption for religious organizations in certain circumstances. Specifically, § 2000e-1(a) provides that:

> This subchapter [of Title VII] shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment

of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a).**[7]**

Section 2000e-1(a) does not exempt religious organizations from Title VII's provisions barring discrimination on the basis of race, gender, or national origin. Importantly, as originally enacted, the exemption applied only to personnel decisions related to carrying out an organization's religious activities. *See Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334 n.9 (1987). The revised provision, adopted in 1972, broadens the exemption to include any activities of religious organizations, regardless of whether those activities are religious or secular in nature. Thus, "[t]he decision to employ individuals 'of a particular religion' under § 2000e-1(a) and § 2000e-2(e)(2) has been interpreted to include the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer." *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000).

As St. Catherine notes, the exemption for religious organizations provides that the "subchapter," that is, § 2000e, "shall not apply" with respect to the "employment" of individuals "of a particular religion." The district court determined that the term "employment" was synonymous with what it termed "employment decisions" like hiring and firing. (J.A. at 70). On appeal, Kennedy presses this reading of the statute, con-

---

**[7]**In addition to this statutory exemption, we have also recognized a "ministerial exception," to federal antidiscrimination laws compelled by the First Amendment. *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1166-67 (4th Cir. 1985). This exception, which exempts ministerial employees more broadly from anti-discrimination laws, is not at issue in this case.

ceding that §2000e-1(a) bars her discriminatory discharge claim but contending that the exemption does not reach harassment or retaliation claims.

This narrow reading of "employment" is simply incompatible with the actual language of §2000e-1(a). First, "as in all statutory construction, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Bilski v. Kappos*, 130 S. Ct. 3218, 3226 (2010) (internal quotation marks and alterations omitted). Today, as at the time §2000e-1(a) was originally enacted, "employment" means "the relationship between master and servant" and "the state of being employed". Black's Law Dictionary 9th ed.; *see also* Merriam-Webster's Collegiate Dictionary (11th Ed. 2004) (defining "employment" as "activity in which one engages or is employed" or "the act of employing: the state of being employed"); *Associated Gen. Contractors of America, Houston Chapter*, 143 N.L.R.B. 409, 412, *enforced*, 349 F.2d 449 (5th Cir. 1965) ("'[E]mployment' connotes the initial act of employing as well as the consequent state of being employed."). As the Second Circuit has explained:

> "In instances where Congress uses terms-such as . . . employment-"that have accumulated settled meaning under . . . the common law," courts generally infer, unless the statute indicates otherwise, that "Congress means to incorporate the established meaning of these terms," e.g., "the conventional master-servant relationship as understood by common-law agency doctrine."

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992)). This definition, which covers the breadth of the relationship between the employer and employee, clearly indicates that §2000e-1(a) should not be limited to hiring and firing decisions.

The use of the term "employment" elsewhere in Title VII buttresses this conclusion. Congress used the term "employment" in the operative section of Title VII, labeling as unlawful the failure or refusal "to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of *employment*" on discriminatory grounds. 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Again, the term "employment" in this section encompasses more than hiring or firing; if the term were so limited, the second clause would be superfluous. *See Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 707, n. 13 (1978) (internal quotation marks omitted) (noting that the clause "terms, conditions, or privileges of employment" evinces Congress' intent "to strike at the entire spectrum of disparate treatment of men and women" in employment). Moreover, there is a "presumption that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). "Employment," as used throughout Title VII, simply covers a much broader understanding than mere hiring and firing. Indeed, if Congress had intended to limit §2000e-1(a) to hiring and firing it could have copied the first clause from §2000e-2(a)(1), exempting religious organizations from Title VII with respect to the decision "to hire or to discharge" an individual of a particular religion. It did not, and instead chose the broader term "employment."

Kennedy's harassment and retaliation claims both arise from her "state" of "being employed." In addition, the "subchapter" referred to in §2000e-1(a) includes both § 2000e-2(a)(1), which covers harassment and discriminatory discharge claims, and § 2000e-3(a), which covers retaliation claims. *See* 42 U.S.C. § 2000e-3(a) (retaliation); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64 (1986) (holding harassment is discrimination on the basis of the "terms, conditions, or privileges of employment" under § 2000e-2(a)(1)). Thus, Kennedy's three claims—discharge, harassment, and retaliation—all arise from the "subchapter" covered by the

religious organization exemption, and they all arise from her "employment" by St. Catherine. *See Saeemodarae v. Mercy Health Serv.*, 456 F.Supp.2d 1021, 1041 (N.D. Iowa 2006) (holding retaliation claim fell within the exemption because the retaliation provision is within the same "subchapter"); *Lown v. Salvation Army, Inc.*, 393 F.Supp.2d 223, 254 (S.D.N.Y. 2005) (same).

This conclusion conforms with the purpose behind the exemption as well:

> Congress intended the explicit exemptions to Title VII to enable religious organizations to create and maintain communities composed solely of individuals faithful to their doctrinal practices, whether or not every individual plays a direct role in the organization's "religious activities."

*Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991). Thus, in *Little*, a Catholic school was permitted to decline to renew a teacher's contract when she remarried: "permission to employ persons 'of a particular religion' includes permission to employ only persons whose beliefs and conduct are consistent with the employer's religious precepts." *Id.*

In sum, if Congress had wished to limit the religious organization exemption to hiring and discharge decisions, it could clearly have done so. Instead, it painted with a broader brush, exempting religious organizations from the entire "subchapter" of Title VII with respect to the "employment" of persons of a "particular religion." This exemption "reflect[s] a decision by Congress that the government interest in eliminating religious discrimination by religious organizations is outweighed by the rights of those organizations to be free from government intervention." *Id.*

Further, a contrary interpretation of "employment" would lead to nonsensical results. Kennedy admits that St. Catherine

could fire her for her religion without any recourse.[8] But, by first asking if she would consider changing her clothing before terminating her—*i.e.*, by giving her the opportunity to keep her job—St. Catherine would suddenly open itself up to the strictures of Title VII. Such an approach cannot be squared with Congress' desire in the first instance to permit a cooperative, accommodative approach to workplace discrimination. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) (noting "[c]ooperation and voluntary compliance were selected as the preferred means for achieving" the "equality of employment opportunities by eliminating [discrimination]"). Instead, Kennedy's view of the statute would counsel religious organizations to immediately discharge an employee over any religious issue rather than consider some attempt at compromise to permit the employee to remain employed.[9]

---

[8]To the extent this reading of the exemption purports to impinge on the employee's free exercise rights, "it was the Church . . . and not the Government, who put [the employee] to the choice of changing his religious practices or losing his job." *Amos*, 483 U.S. at 337 n.15.

[9]In reaching an opposite conclusion, the district court relied, in part, on the EEOC Compliance Manual, which provides that "the exemption only applies to hiring and discharge, and does not apply to terms, conditions, or privileges of employment, such as wages or benefits." EEOC Compliance Manual § 2 (available at http://www.eeoc.gov/policy/docs/threshold.html#2-III-B-4-b) (last visited May 25, 2011).

Because we believe the exemption's language is unambiguous, we need not defer to the manual. Moreover, this interpretation, which is viewed under *Skidmore* deference, contains no attendant rationale, lacks the power to persuade, and does not warrant deference. *See United States Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 354 (4th Cir. 2004) (declining to grant *Skidmore* deference to Labor Department interpretation that lacked "thoroughness" and failed to provide an "explanation" to support its rationale). The provision is a far cry from the cases cited by Kennedy, in which the Supreme Court referenced the Compliance Manual. *See e.g.*, *Clackamas Gastroenterology Assoc., P.C. v. Wells*, 538 U.S. 440, 448-49 (2003) (discussing Compliance Manual provision that reviewed sixteen factors for consideration drawn from an earlier Supreme Court case).

### III.

In his dissent, Judge King insists that we should not decide this appeal. The district court; a panel of this court (comprised of Judge Agee, Judge Motz, and Judge King); two members of this panel; and (as noted above) both parties, agree that we have jurisdiction over this interlocutory appeal. However, Judge King now declares we should not hear it. Noting that he was on the panel that granted permission to appeal, Judge King states that after full briefing and oral argument he has decided that action was "improvident." (Dissent Op. at 16). In his view, because it is "far from clear" that Kennedy has stated a viable Title VII claim, (Dissent Op. at 16), we should dismiss the appeal and "wait for the district court to determine whether Kennedy has stated and can prove" her claims, (Dissent Op. at 19). To our knowledge, there is nothing in the record before us now that was unavailable at the time certification was granted, and the parties do not address—much less oppose—the propriety of the certification in their briefs.

We disagree with Judge King for several reasons. First, the requirements of § 1292(b) are clearly satisfied in this case. That provision provides that certification by a district court is appropriate if the district court's order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "immediate appeal . . . may materially advance the ultimate termination of the litigation." Both requirements are met in this case. We are faced with a pure question of law and our resolution of it terminates the case. It was thus properly within our discretion to permit the appeal. Nothing has changed since we granted permission to appeal which causes § 1292(b) to be inapplicable.

Second, there is no doctrine counseling courts to avoid ruling on legal issues involving *undisputed* facts that are before them. To the contrary, that is the crux of Article III power and exercising such authority does not create an advisory opinion. Courts have a "virtually unflagging obligation . . . to exercise

the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Thus, even the Supreme Court has answered legal questions posed in § 1292(b) orders before the factual development of the record has occurred. *See*, *e.g.*, *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 179 (1982) (noting that Sumitomo moved to dismiss Title VII case on ground that statute did not apply to its actions "[w]ithout admitting the alleged discriminatory practice," and that the circuit court accepted an interlocutory appeal under § 1292(b) denying the motion to dismiss).

Third, we are fully cognizant of the doctrine of *constitutional* avoidance. *See Snyder v. Phelps*, 580 F.3d 206, 227 (4th Cir. 2009) (Shedd, J., concurring), *affirmed on other grounds* 131 S.Ct. 1207 (2011). In fact, as noted *supra* note 5, we are actually applying that doctrine in this case to avoid reaching St. Catherine's First Amendment argument. However, Judge King's reliance on some form of *statutory* avoidance simply has no place in this case. Indeed, if the district court in this case had, for instance, granted St. Catherine's motion to dismiss for failure to state a claim without addressing Title VII's religious exemption, we nonetheless would be free on appeal to affirm on the statutory basis without considering the merits. *See*, *e.g.*, *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009) (noting "we are not limited to evaluation of the grounds offered by the district court to support its decision, but we may affirm on any grounds apparent from the record.") (internal quotation marks and alterations omitted). Judge King's proposed course would lead to an anomalous result—we could address the statutory issue even if the district court declined to do so, but we should not address it when—as here—it is the only issue properly before us.

Finally, Judge King's approach would also waste judicial resources by mandating that we remand a case which he believes lacks any substantial merit for further proceedings

and (possibly) costly discovery. This waste of judicial resources would not be limited to this case because Judge King's approach would counsel district courts to refrain from dismissing cases on statutory legal grounds when it is possible that the party will lose on the merits at some indeterminate point in the future. As we have noted before, "[r]epetitive hearings, followed by additional appeals, waste judicial resources and place additional burdens on . . . district and appellate judges" while also siphoning those resources from more worthwhile cases. *Doe v. Chao*, 511 F.3d 461, 465-66 (4th Cir. 2007) (internal quotation marks omitted).

## IV.

Because the plain language of §2000e-1(a) exempts religious organizations like St. Catherine from Kennedy's claims of religious discrimination, the district court erred in denying St. Catherine's motion for summary judgment. We therefore reverse the district court's order and remand with instructions to enter judgment in favor of St. Catherine.

*REVERSED AND REMANDED*

KING, Circuit Judge, dissenting:

I must respectfully dissent from the majority's decision because it unnecessarily settles a novel and complex statutory issue, thereby contravening the fundamental principle of judicial restraint. In one fell swoop, the majority interprets the 42 U.S.C. § 2000e-1(a) exemption to shield religious organizations from every Title VII claim alleging either religious harassment or retaliation for opposing such harassment. Rather than solve the difficult problem of whether the exemption stretches that far, I would decertify and dismiss this 28 U.S.C. § 1292(b) interlocutory appeal, leaving the district court to answer the much simpler questions of whether Kennedy has adequately pleaded or can forecast sufficient evidence to prove a Title VII violation. If not, St. Catherine

would be entitled to dismissal or summary judgment, and the issue of the exemption's reach would be moot.[1]

## I.

It is generally understood that § 1292(b) of Title 28 "should be used sparingly." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (recognizing that use of § 1292(b) is reserved for "exceptional circumstances [that] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment" (internal quotation marks omitted)). That jurisdictional provision authorizes a district court, in rendering an otherwise unappealable order in a civil action, to state in writing that (1) "such order involves a controlling question of law as to which there is substantial ground for difference of opinion" and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If application is made to the appropriate court of appeals within ten days after the certification, the appellate court "may thereupon, in its discretion, permit an appeal to be taken from such order." *Id.* Of course, the court of appeals may later dismiss the § 1292(b) appeal if it becomes apparent that review was improvidently granted. *See, e.g.*, *Wilson v. Ferrell*, 738 F.2d 637, 638 (4th Cir. 1984) ("Upon further consideration of the facts, issues, and course

---

[1]The majority, in Part III of its opinion, appears to misapprehend the essential predicate of my dissent. I do not contest our discretionary jurisdiction or seek to construct some doctrine of "statutory avoidance." Rather, I am convinced that we should, in these circumstances, simply apply and exercise judicial restraint. In the words of the D.C. Circuit, "[i]f we do not decide it now, we may never need to. Not only does this rationale protect the expenditure of judicial resources, but it comports with our theoretical role as the governmental branch of last resort. Article III courts should not make decisions unless they have to." *Nat'l Treasury Emp. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (citing *Allen v. Wright*, 468 U.S. 750, 752 (1984) (O'Connor, J.) (underscoring "the Art. III notion that federal courts may exercise power only in the last resort, and as a necessity" (internal quotation marks omitted))).

of proceedings to date in this action, we are of opinion that permission to appeal under 28 U.S.C. § 1292(b) was improvidently granted.").

Kennedy alleged three claims against St. Catherine under Title VII — religious harassment, retaliatory discharge for opposing such harassment, and discriminatory discharge premised on her religion. St. Catherine filed an answer to the complaint and, before the parties had completed any discovery, moved for summary judgment asserting that the 42 U.S.C. § 2000e-1(a) exemption for religious organizations precludes all of Kennedy's claims regardless of their merits. In response, Kennedy conceded that her discriminatory discharge claim was barred by the exemption but opposed the motion as to her harassment and retaliation claims. The district court denied summary judgment as to those two claims, concluding that the exemption did not apply. *See Kennedy v. Villa St. Catherine's, Inc.*, 709 F. Supp. 2d 404 (D. Md. 2010). Nevertheless, the court granted St. Catherine's request for certification of a § 1292(b) interlocutory appeal. *See Kennedy v. Villa St. Catherine's, Inc.*, No. 1:09-cv-03021 (D. Md. June 16, 2010) (the "Certification Order").[2]

In concluding that a § 1292(b) appeal was appropriate, the district court identified the controlling question of law to be whether § 2000e-1(a) "exempts a religious institution from liability when the religious discrimination it purportedly commits takes the form of religious harassment." Certification Order 2. The court also concluded that "substantial grounds for difference may be found by virtue of the strong public policy purpose served by" § 2000e-1(a). *Id.* at 4. And, over Kennedy's objection that "the case might settle or summary judgment might be entered on other grounds," the court sur-

---

[2]The unpublished Certification Order is found at J.A. 72-76. (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

mised that immediate "appeal may lead to a possible terminus for the case." *Id.* at 4-5.

Within ten days of the Certification Order's entry, St. Catherine filed in this Court a petition for permission to appeal, which we granted by order of July 14, 2010. Although I was a member of the panel that granted the petition, I am now convinced — with the benefit of full briefing and oral argument — that our action was improvident. Accordingly, as further explained below, I would dismiss the appeal and await additional district court proceedings.

## II.

### A.

Notwithstanding the possible applicability of the 42 U.S.C. § 2000e-1(a) exemption, it is far from clear that Kennedy's religious harassment and retaliation claims can survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. As of yet, the parties have not conducted discovery, but the viability of Kennedy's claims can be gauged from the operative First Amended Complaint of December 9, 2009 (the "Complaint").[3]

According to the Complaint, Kennedy was employed as a geriatric nursing assistant at St. Catherine's Nursing Center in Emmitsburg, Maryland, from 1994 through May 2007. *See* Complaint ¶¶ 3, 6-7. During that time, she wore "modest garb that include[d] long dresses/skirts and a cover for her hair" in reverence to her personal religious beliefs as a member of the Church of the Brethren. *Id.* at ¶¶ 8-9. Kennedy alleges that the Center's Director of Nursing Services (while acting in that capacity and in a prior role as Assistant Director of Nursing Services) "subjected [Kennedy] to a course of conduct which included unwelcome, inappropriate and offensive comments

---

[3]The Complaint is found at J.A. 7-11.

regarding [her] religious garb." *Id.* at ¶ 11. Notably, the Complaint specifies only that the alleged harassment "included comments that [Kennedy's] garb was inappropriate in a Catholic institution," that it "made the residents' family members uncomfortable" and "made [Kennedy] stand out," and that she "should remove her hair covering" and "should conform to a more traditional mode of dress." *Id.* at ¶ 12. Those comments were uttered "in the presence of [the] Center's Administrator/CEO[,] who did nothing to halt [them]." *Id.* at ¶ 13. Meanwhile, Kennedy protested "that the comments about [her] garb were unwelcome and offensive to her[,] and that her garb was a function of her religion and did not interfere with her professional responsibilities." *Id.* at ¶ 17. Ultimately, St. Catherine "terminated [Kennedy's] employment on May 17, 2007." *Id.* at ¶ 18.

For success on her religious harassment claim, Kennedy must plead and be able to prove a hostile work environment, i.e., "that the harassment was (1) unwelcome, (2) because of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to [St. Catherine]." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008). The "severe or pervasive" element may be particularly troublesome for Kennedy, because it requires a showing that the environment was both subjectively and objectively hostile or abusive. *Id.* at 315. To satisfy that objective component, "the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" *Id.* (alterations in original) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Proof of "an employment atmosphere that is 'permeated with discriminatory intimidation, ridicule, and insult'" will satisfy Kennedy's burden, *id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)), whereas a mere demonstration of "'simple teasing, offhand comments, and isolated

incidents (unless extremely serious) will not,'" *id.* (quoting *Faragher*, 524 U.S. at 788).**⁴**

It is highly questionable whether the Complaint sufficiently alleges the "severe or pervasive" element of Kennedy's religious harassment claim. Although Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,'" it does demand that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* at 1950 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Here, the Complaint's allegations raise the possibility that the comments about Kennedy's religious garb created an atmosphere so abusive that they altered the conditions of her employment, but additional facts (as opposed to conclusory statements) would likely be necessary to show, objectively, that those comments were sufficiently severe or pervasive. *Cf. Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (affirming dismissal of race and gender harassment claim because the plaintiff's allegations "fall well short of alleging an abusive working environment").

It is also unclear whether the alleged facts are adequate to sustain Kennedy's claim of retaliation for opposing religious harassment. To prevail on her retaliation claim, Kennedy must show that (1) she "engaged in a protected activity," (2) St. Catherine "acted adversely against [her]," and (3) her "protected activity was causally connected to [St. Catherine's]

---

**⁴**Notably, at oral argument in this appeal, counsel for St. Catherine expressed confidence that, with the benefit of discovery, Kennedy's claims would be defeated on the merits because St. Catherine "didn't harass her at all."

adverse action." *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997). Kennedy asserts that she undertook a "protected activity" when she opposed the harassing comments made about her religious garb. *See* 42 U.S.C. § 2000e-3(a) (prohibiting discrimination against an employee "because he has opposed any practice made an unlawful employment practice by this title"). As discussed above, Kennedy's religious harassment claim is of dubious merit. Kennedy might seek solace in the accepted proposition that § 2000e-3(a) "protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). Importantly, however, "[b]ecause the analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law." *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006). And it is not certain here that the Complaint provides enough facts to credit the reasonableness of Kennedy's belief that the comments she protested rose to the level of unlawful harassment. Further questions remain for the summary judgment stage as to whether Kennedy's discharge was "causally connected" to her protests against the comments; for example, St. Catherine may have possessed some other, non-retaliatory reason to terminate Kennedy's employment.

## B.

Rather than wait for the district court to determine whether Kennedy has stated and can prove religious harassment and retaliation claims, the majority deems all such Title VII claims against religious organizations to be barred by the § 2000e-1(a) exemption. There is no principled reason to decide the exemption issue today, however, because "the statutory exemptions from religious discrimination claims under Title VII cannot be waived by either party." *See Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 625 (6th Cir. 2000). Furthermore, "the cardinal principal of judicial

restraint" — "that if it is not necessary to decide more, it is necessary not to decide more" — counsels against reaching the exemption issue before Kennedy's claims are measured against the Rule 12(b)(6) and 56 standards. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 476 (4th Cir. 2007) (en banc) (Williams, C.J., concurring in part) (internal quotation marks omitted).

In recognition of the principle that "[m]oot questions require no answer," *Mo., Kan. & Tex. Ry. Co. v. Ferris*, 179 U.S. 602, 606 (1900), courts have judiciously declined to entertain § 1292(b) appeals where the question certified may be mooted by further proceedings in the district court. *See, e.g.*, *Sandler v. E. Airlines, Inc.*, 649 F.2d 19, 20 (1st Cir. 1981) (dismissing § 1292(b) appeal without addressing merits of question certified on scope of Title VII because, inter alia, it was unclear whether complaint stated cause of action); *United States v. Rent-A-Homes Sys. of Ill., Inc.*, 602 F.2d 795, 797 (7th Cir. 1979) (explaining that court had previously disallowed § 1292(b) appeal of district court order precluding monetary damages because, if "plaintiff fail[ed] to prove its case below," damages issue would "never be reached" (internal quotation marks omitted)). Here, too, we will not have to address the question certified, on the scope of the § 2000e-1(a) exemption, if St. Catherine can otherwise prevail on a motion to dismiss or a motion for summary judgment.

Significantly, "[t]he potential for mootness takes on even greater weight . . . when the question we may never have to address presents sophisticated and unprecedented questions." *Cf. Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1030-31 (6th Cir. 1994) (concluding that interlocutory appeal was not properly certified under Federal Rule of Civil Procedure 54(b) given "significant possibility" that "novel and complex questions of state law presented on appeal" would subsequently "be rendered moot"). For, "[i]n keeping with notions of judicial restraint, federal courts should not reach out to resolve complex and controversial questions unneces-

sarily." *Id.* (internal quotation marks omitted). The question presented in this § 1292(b) appeal is one of first impression in this Circuit with profound implications — one that probably need not be reached. As such, the majority issues what is effectively an advisory opinion construing a remedial statute to broadly preclude claims for relief.[5]

I am loath to join the majority in its unwarranted endeavor and thus respectfully dissent.

---

[5]I fear the majority has decided the question certified without the proper factual context. *See Paschall v. Kan. City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979) ("Inherent in [the § 1292(b)] requirements is the concept of ripeness. . . . The purpose of [§] 1292(b) is not to offer advisory opinions rendered on hypotheses which evaporate in the light of full factual development." (internal quotation marks and alteration omitted)). The majority adopts a seemingly boundless interpretation of "employment" as more than "hiring and firing" even though it is unclear from the Complaint that Kennedy's employment was, in fact, affected apart from her termination. Interpreting the scope of the § 2000e-1(a) exemption absent adequate factual development exceeds our judicial mandate. We decide cases on appeal based on the facts in the record before us.