# SUPREME COURT OF THE UNITED STATES

### SEATTLE'S UNION GOSPEL MISSION *v.* MATTHEW S. WOODS

#### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF WASHINGTON

No. 21–144. Decided March 21, 2022

The petition for a writ of certiorari is denied.

Statement of JUSTICE ALITO, with whom JUSTICE THOMAS joins, respecting the denial of certiorari.

The First Amendment gives "special solicitude to the rights of religious organizations" to operate according to their faith without government interference. *Hosanna-Tabor Evangelical Lutheran Church and School* v. *EEOC*, 565 U. S. 171, 189 (2012). In certain contexts, this autonomy requires courts to "stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." *Our Lady of Guadalupe School* v. *Morrissey-Berru*, 591 U. S. \_\_\_, \_\_\_ (2020) (slip op., at 11). Consistent with this constitutional principle, Congress has long exempted religious employers from federal employment laws that would otherwise interfere with their ability "to define and carry out their religious missions" by imposing "potential liability" for hiring practices that favor co-religionists. *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints* v. *Amos*, 483 U. S. 327, 335–336 (1987); see also *id.*, at 342–343 (Brennan, J., concurring) ("a religious organization should be able to require that only members of its community perform those activities" that "constitute part of a religious community's practice").

Because of such federal statutory exemptions and their state analogs, we have yet to confront whether freedom for

religious employers to hire their co-religionists is constitu-tionally required, though the courts of appeals have gener-ally protected the autonomy of religious organization to hire personnel who share their beliefs. See, *e.g.*, *Little* v. *Wuerl*, 929 F. 2d 944 (CA3 1991); *Kennedy* v. *St. Joseph's Minis-tries, Inc.*, 657 F. 3d 189 (CA4 2011); *EEOC* v. *Mississippi College*, 626 F. 2d 447 (CA5 1980); *Hall* v. *Baptist Mem. Health Care Corp.*, 215 F. 3d 618 (CA6 2000); *Killinger* v. *Samford Univ.*, 113 F. 3d 196 (CA11 1997).

But in this case the confrontation may be inevitable, as it involves an employment dispute between a religious em-ployer and an applicant who was not hired because he dis-agreed with that employer's religious views. The Washing-ton Supreme Court expressly declined to apply its state employment law exemption for religious entities to this dis-pute. Instead, it held that if that state exemption applied to employment decisions beyond those involving church ministers, such an exemption would violate the Washington State Constitution's protection for other individual rights and could become a "license to discriminate." Because of the interlocutory posture of this case, I concur in the denial of certiorari at this time. But the day may soon come when we must decide whether the autonomy guaranteed by the First Amendment protects religious organizations' freedom to hire co-religionists without state or judicial interference.

I

Petitioner Seattle's Union Gospel Mission (Mission) was founded in 1932 to care for those suffering from the eco-nomic hardships attending the Great Depression. App. to Pet. for Cert. 159a. The Mission is a tax-exempt community categorized as a church equivalent by the Internal Revenue Service under 26 U. S. C. §170(b)(1)(A)(i). It requires its paid staff to affirm its statement of faith, which declares "the Bible is the inspired, infallible, authoritative Word of God." App. to Pet. for Cert. 153a. Its employee handbook

also requires staff to abide by the Mission's understanding of the Bible by refraining from "[a]cts or language which are considered immoral or indecent according to traditional biblical standards," including "extra-marital affairs, sex outside of marriage, [and] homosexual behavior." *Id.,* at 160a, 162a.

In 2016, respondent Matthew Woods, a former summer intern and volunteer for the Mission, saw a job posting for a staff attorney position in the Mission's legal aid clinic. He disclosed to the legal aid clinic's staff that he identified as bisexual and was in a same-sex relationship, and he asked whether that would pose an obstacle to employment with the Mission. *Id.,* at 181a–182a, 200a–201a. The clinic's director quoted the employee handbook and explained that Woods was not "able to apply," but the director wished him well and later sent Woods a secular legal aid clinic's job posting. *Id.,* at 122a, 184a, 197a–198a.

Woods nevertheless applied for the Mission's staff attorney position to "protest" the Mission's employment policy. *Id.,* at 127a. His application also disclosed that Woods was not an active member of a local church and could not provide a pastor's name and contact information, as the application requested. Woods's cover letter asked the Mission to "change" its religious practices. *Id.,* at 195a.

After he applied, the clinic's director met Woods for lunch and confirmed that the Mission could not change its theology. *Id.,* at 147a. He explained that Woods's employment application was not viable because he did not comply with the Mission's religious lifestyle requirements, did not actively attend church, and did not exhibit a passion for helping clients develop a personal relationship with Jesus. The Mission hired a co-religionist candidate instead.

In 2017, Woods filed suit against the Mission in the Superior Court of King County. He alleged that the Mission violated Washington's Law Against Discrimination

(WLAD), which forbids discrimination against sexual orientation in employment decisions.  The Mission answered that entertaining the suit would violate the First Amendment's Religion Clauses.  The Mission also argued that it fell into an express statutory exemption from the WLAD, which excludes "any religious or sectarian organization not organized for private profit" from its definition of "employer."  Wash. Rev. Code §49.60.040(11) (2020).  The Washington state trial court agreed, noting that the Mission "put applicants on notice" that employees must "accept the Mission's Statement of Faith" and that the staff attorney's duties would "extend beyond legal advice to include spiritual guidance and praying with the clients."  App. to Pet. for Cert. 64a–65a.  The trial court thus dismissed the suit based on the WLAD's statutory exemption.

The Washington Supreme Court granted Woods's petition for direct review and reversed.  The court held that as applied to Woods's lawsuit, the WLAD's religious exemption would violate protections for sexual orientation and same-sex marriage implicit in the Washington Constitution's Privileges and Immunities Clause, Art. I, §12, unless the court narrowed the scope of the WLAD religious exemption.  It thus reasoned that the State Constitution would not be "offended if WLAD's exception for religious organizations is applied concerning the claims of a 'minister' as defined by *Our Lady of Guadalupe* and *Hosanna-Tabor*."  197 Wash. 2d 231, 250, 481 P. 3d 1060, 1069 (2021).

Rather than enter a final judgment, the Washington Supreme Court concluded that a "material question of fact remains concerning whether the [Mission] staff attorneys qualify as ministers."  *Id.*, at 252, 481 P. 3d, at 1070.  It thus remanded for "the trial court to determine whether staff attorneys can qualify as ministers."  *Ibid.*

## II

The Washington Supreme Court's reasoning presumes

that the guarantee of church autonomy in the Constitution's Religion Clauses protects only a religious organization's employment decisions regarding formal ministers. But our precedents suggest that the guarantee of church autonomy is not so narrowly confined. As early as 1872, our church-autonomy cases explained that "civil courts exercise no jurisdiction" over matters involving "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Watson* v. *Jones*, 13 Wall. 679, 733 (1872). That is so because the Constitution protects religious organizations "from secular control or manipulation." *Kedroff* v. *Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U. S. 94, 116 (1952). The religious organizations protected include churches, religious schools, and religious organizations engaged in charitable practices, like operating homeless shelters, hospitals, soup kitchens, and religious legal-aid clinics similar to the Mission's—among many others.

Such religious groups' "very existence is dedicated to the collective expression and propagation of shared religious ideals," and "there can be no doubt that the messenger matters" in that religious expression. *Hosanna-Tabor*, 565 U. S., at 200–201 (ALITO, J., concurring). To force religious organizations to hire messengers and other personnel who do not share their religious views would undermine not only the autonomy of many religious organizations but also their continued viability. If States could compel religious organizations to hire employees who fundamentally disagree with them, many religious non-profits would be extinguished from participation in public life—perhaps by those who disagree with their theological views most vigorously. Driving such organizations from the public square would not just infringe on their rights to freely exercise religion but would greatly impoverish our Nation's civic and religious life.

This case illustrates that serious risk. Woods applied for a position with the Mission not to embrace and further its religious views but to protest and fundamentally change them. The Washington Legislature sought to prevent its employment laws from being used in such a way by exempting "any religious or sectarian organization not organized for private profit" from its definition of a covered "employer." Wash. Rev. Code §49.60.040(11); see Brief for 20 Current and Former Washington State Legislators as *Amici Curiae* 4–5. The Washington Supreme Court's decision to narrowly construe that religious exemption to avoid conflict with the Washington Constitution may, however, have created a conflict with the Federal Constitution.

## III

The Washington Supreme Court's decision may warrant our review in the future, but threshold issues would make it difficult for us to review this case in this posture. The state court did not address whether applying state employment law to require the Mission to hire someone who is not a co-religionist would infringe the First Amendment. Further, respondent claims that the Washington Supreme Court's decision is not a final judgment because of its interlocutory nature, see 28 U. S. C. §1257(a), while petitioner contends that we have jurisdiction under *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 477 (1975). Given respondent's admission that "there is no prospect that this Court would be precluded from reviewing" these First Amendment questions "once there is a final state judgment," Brief in Opposition 21–22, I concur in the denial of certiorari.